## UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| MARK MILLER, MICHELE GANGNES, SCOTT COPELAND, LAURA PALMER, TOM KLEVEN, ANDY PRIOR, AMERICA'S PARTY OF TEXAS, CONSTITUTION PARTY OF TEXAS, GREEN PARTY OF TEXAS and LIBERTARIAN PARTY OF TEXAS, <br><br> *Plaintiffs*, <br><br> v. <br><br> JOHN OR JANE DOE, in his or her official capacity as the Secretary of State of the State of Texas, and JOSE A. "JOE" ESPARZA, in his official capacity as the Deputy Secretary of State of the State of Texas, <br><br> *Defendants*. | Civil No. 1:19-cv-00700-RP |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................... 1

LEGAL STANDARDS ........................................................................................... 3

ARGUMENT .......................................................................................................... 3

  I.  Plaintiffs Have Standing to Challenge the Independent Candidate Requirements ............. 3

    A.  The Voter Plaintiffs Have Standing to Challenge the Independent Candidate Requirements ................................................ 4

    B.  Plaintiff Mark Miller Has Standing to Challenge the Independent Candidate Requirements ................................................ 7

  II.  Defendants Fail to Provide Grounds for Dismissal under Rule 12(b)(6) ........................... 9

    A.  Plaintiffs Have Adequately Pled their Constitutional Claims ............................. 9

    B.  Defendants Fail to Challenge the Sufficiency of Plaintiffs' Allegations ...................... 10

CONCLUSION ...................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Am. Party of Tex. v. White*,
   415 U.S. 767 (1974)................................................................................11, 14

*Anderson v. Celebrezze*,
   460 U.S. 780 (1983)................................................................................*passim*

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................3, 9

*Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*,
   627 F.3d 547 (5th Cir. 2010) ................................................................3

*Bachur v. Democratic Nat. Party*,
   836 F.2d 837 (4th Cir. 1987) ................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................10

*Bullock v. Carter*,
   405 U.S. 134 (1972)................................................................................*passim*

*Burdick v. Takushi*,
   504 U.S. 428 (1992)................................................................................11, 12

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)................................................................................8

*Clements v. Fashing*,
   457 U.S. 957 (1982)................................................................................11

*Constitution Party of Pa. v. Aichele*,
   757 F.3d 347 (3rd Cir. 2014) ................................................................8

*Dekom v. New York*,
   No. 12-CV-1318 JS ARL, 2013 WL 3095010 (E.D.N.Y. June 18, 2013) ................................8

*Erum v. Cayetano*,
   881 F.2d 689 (9th Cir. 1989) ................................................................5

*Faas v. Cascos*,
   225 F. Supp. 3d 604 (S.D. Tex. 2016) ................................................................18

*Henderson v. Fort Worth Indep. Sch. Dist.*,
   526 F.2d 286 (5th Cir. 1976) ................................................................4

*Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*,
  920 F.3d 890 (5th Cir. 2019) ...................................................................3

*Jenness v. Fortson*,
  403 U.S. 431 (1971)..................................................................................4

*Jones v. Bush*,
  122 F. Supp. 2d 713 (N.D. Tex. 2000) ....................................................4

*In re Katrina Canal Breaches Litig.*,
  495 F.3d 191 (5th Cir. 2007) .................................................................10

*Kennedy v. Pablos*,
  No. 1:16-CV-1047-RP, 2017 WL 2223056 (W.D. Tex. May 18, 2017) ..................7

*Libertarian Party of S. Dakota v. Krebs*,
  290 F. Supp. 3d 902 (D.S.D. 2018) .....................................................5, 6

*Matter of Life Partners Holdings, Inc.*,
  926 F.3d 103 (5th Cir. 2019) ...................................................................3

*Lubin v. Panish*,
  415 U.S. 709 (1974).................................................................................13

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)...............................................................................3, 8

*McLain v. Meier*,
  851 F.2d 1045 (8th Cir. 1988) .............................................................5, 6

*Meyer v. Texas*,
  Civ. No. H-10-3860, 2011 WL 1806524 (S.D. Tex. May 11, 2011)......................19

*Munro v. Socialist Workers Party*,
  479 U.S. 189 (1986).................................................................................4

*Nader v. Connor*,
  332 F. Supp. 2d 982 (W.D. Tex. 2004).......................................... *passim*

*Neitzke v. Williams*,
  490 U.S. 319 (1989)................................................................................11

*Pennell v. City of San Jose*,
  485 U.S. 1 (1988).....................................................................................3

*Pilcher v. Rains*,
  683 F. Supp. 1130 (W.D. Tex. 1988)........................................................1

*Pilcher v. Rains*,
    853 F.2d 334 (5th Cir. 1988) ........................................................................................1, 12, 19

*Republic Waste Servs. of Texas, Ltd. v. Texas Disposal Sys., Inc.*,
    848 F.3d 342 (5th Cir. 2016) ...................................................................................................3

*Storer v. Brown*,
    415 U.S. 724 (1974)............................................................................................ *passim*

*Texas Indep. Party v. Kirk*,
    84 F. 3d 178 (5th Cir. 1996) ...................................................................................11, 18, 19

*Walker v. Barnett*,
    No. CIV 18-4015, 2019 WL 1428723 (D.S.D. Mar. 29, 2019)...........................................5, 6

*Williams v. Rhodes*,
    393 U.S. 23 (1968)..................................................................................................4, 6

*Williamson v. Tucker*,
    645 F. 2d 404 (5th Cir. 1981) ..............................................................................................3, 8

*YETI Coolers LLC v. JDS Indus., Inc.*,
    300 F. Supp. 3d 899 (W.D. Tex. 2018)...................................................................................9

*Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*,
    982 F. Supp. 2d 714 (W.D. Tex. 2013).................................................................................10

## Statutory Provisions

Act of May 20, 2019, 86th Leg., R.S., ch. 141, § 141.041, 2019 Tex. Elec. Code
    520.................................................................................................................................2, 15

Texas Election Code Chs. 141, 142, 162, 181, 192, 202 ...................................... *passim*

Plaintiffs Mark Miller, Michele Gangnes, Scott Copeland, Laura Palmer, Tom Kleven, Andy Prior, America's Party of Texas ("APTX"), the Constitution Party of Texas ("CPTX"), the Green Party of Texas ("GPTX"), and the Libertarian Party of Texas ("LPTX") (collectively, "Plaintiffs") respectfully submit this brief in opposition to Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), filed on August 8, 2019 (ECF 16.) ("Mot.").

## PRELIMINARY STATEMENT

Plaintiffs allege that numerous provisions of the Texas Election Code, in combination, impose severe burdens and prohibitive costs on independent candidates ("Independents"), political parties that nominate by convention ("Non-Primary Parties"), and candidates from those parties ("Non-Primary Party candidates") seeking ballot access.   (Am. Comp. ¶¶ 23-66.)   These burdensome requirements deprive Plaintiffs of their First and Fourteenth Amendment rights as voters, candidates, and Non-Primary Parties.  (Am. Comp. ¶¶ 67-83.)

Rather than directly address the factual allegations in the Amended Complaint, Defendants essentially argue that *this* case should be dismissed because *other* challenges to the Texas Election Code have failed.  Under Defendants' theory, the fact that portions of the Texas Election Code were previously upheld means that they can never again be challenged.  These cases, however, were not decided in a vacuum, but within the context of the particular facts of a particular time. This Court recognized this fundamental principle when it held that a requirement that "may once have been an important aid in . . . maintaining the integrity of the electoral process" can, over time and in light of modern conditions, evolve into "a stifling anachronism" without any constitutionally legitimate purpose. *Pilcher v. Rains*, 683 F. Supp. 1130, 1135–36 (W.D. Tex. 1988), *aff'd*, 853 F.2d 334 (5th Cir. 1988).  As such Defendants' reliance upon prior opinions upholding various aspects of the statutory scheme, without addressing the allegations in *this* case, is plainly insufficient.

1

As to Defendants' specific arguments, each should be rejected. *First*, Defendants' argument that a portion of Plaintiffs' claims (relating to the requirements applicable to Independents) must be dismissed for lack of standing fails, both because it ignores Supreme Court precedent confirming voter standing and because Defendants fail to accept as true, as they must, Plaintiff Miller's allegations concerning his Independent candidacy intentions.

*Second*, Defendants' Rule 12(b)(6) arguments fail because Plaintiffs have adequately pled violations of their First and Fourteenth Amendment rights. Defendants assert a *pleading* deficiency with respect to only one aspect of Plaintiffs' claims, concerning a provision that permits Defendants to delay certification of Non-Primary Party nominees for placement on the ballot until 68 days before the election.[1] As to the remainder of the allegations in the Amended Complaint, Defendants either ignore them or argue that prior cases foreclose consideration of Plaintiffs' claims. (Mot. at 1.) However, by attempting to rely on prior cases to dispose of this case, Defendants have failed to address: (a) allegations detailing the *current* costs of compliance; (b) a *separate* line of Supreme Court precedent (*Bullock v. Carter*, *Lubin v. Panish*) that requires analysis of the costs imposed on voters and candidates, an analysis that requires development of a factual record; and (c) the Supreme Court's instruction to assess the "*totality*" of the burdens imposed by ballot access provisions, which would include those contained in a new provision of the Texas Election Code enacted in June of this year.[2] Defendants confuse the procedural posture of this case[3] by arguing as if a summary judgment motion, rather than a motion to dismiss, were to be decided now by the Court.

---

[1] (Mot. at 17 (asserting "[P]laintiffs fail to state a claim with respect to § 181.007(b).)

[2] Act of May 20, 2019, 86th Leg., R.S., ch. 141, § 141.041, 2019 Tex. Elec. Code 520 (executed by the governor on June 10, 2019).

[3] On July 11, 2019, Plaintiffs filed their Complaint and amended it pursuant to Fed. Rule Civ. P. 15(a)(1) on July 25, 2019. No discovery has been undertaken by any party.

## LEGAL STANDARDS

The elements of Article III standing are well settled:  a plaintiff must allege (1) an "injury in fact" that is "concrete and particularized" and not "conjectural or hypothetical;" (2) which is "fairly…trace[able]" to the defendant's conduct; and (3) is "likely" to be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and quotation marks omitted).  Defendants only challenge the standing of Plaintiffs to challenge the provisions that apply to Independents in this action; however, because Defendants make a facial (rather than factual) attack, the Court must accept as true all material allegations in the Amended Complaint and construe them in favor of Plaintiffs. *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (quoting *Pennell v. City of San Jose,* 485 U.S. 1, 7 (1988)); *Williamson v. Tucker*, 645 F. 2d 404, 412 (5th Cir. 1981).

In analyzing Defendants' 12(b)(6) motion, the Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Republic Waste Servs. of Texas, Ltd. v. Texas Disposal Sys., Inc.*, 848 F.3d 342, 344 (5th Cir. 2016) (internal quotation marks and citations omitted).  A motion to dismiss must be denied "if the allegations in the complaint 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 116 (5th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (same).

## ARGUMENT

**I.      Plaintiffs Have Standing to Challenge the Independent Candidate Requirements.**

Defendants' standing challenge is narrow, targeting only claims relating to Independent candidates.  (Mot. at 8-10.)  This limited challenge fails because it incorrectly asserts that (i) voters do not have standing unless they specify an Independent candidate for whom they wish to vote,

and (ii) only Independent candidates who have already declared to run in a specific race have standing to challenge ballot access laws. *Id.*

   A.   The Voter Plaintiffs[4] Have Standing to Challenge the Independent
        Candidate Requirements.

The Supreme Court has recognized that ballot access laws "place burdens on two different, although overlapping, kinds of rights – the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, *to cast their votes effectively*." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968) (emphasis added).  In this context, the Court held that "the right to vote is heavily burdened if that vote may be cast only for one of two parties at a time when other parties are clamoring for a place on the ballot." *Id.* at 31. This rationale applies equally to the exclusion of Independents from the Texas general election ballot.

The Supreme Court subsequently explained that its "primary concern" in ballot access cases "is not the interest of candidate[s], … but rather, the interests of the voters who chose to associate together to express their support for [the candidates] and the views [they] espoused." *Anderson v. Celebrezze*, 460 U.S. 780, 786, 806 (1983).  Consistent with that precedent, courts routinely recognize that voters – and not just candidates or political parties – have standing to challenge ballot access laws for constitutional violations.  *See, e.g.*, *Munro v. Socialist Workers Party*, 479 U.S. 189, 192 (1986); *Bullock v. Carter*, 405 U.S. 134, 134 (1972); *Storer v. Brown*, 415 U.S. 724, 727 (1974); *Jenness v. Fortson*, 403 U.S. 431, 432 (1971); *Nader v. Connor*, 332 F. Supp. 2d 982, 983 (W.D. Tex. 2004), *aff'd*, 388 F.3d 137 (5th Cir. 2004); *Jones v. Bush*, 122 F. Supp. 2d 713, 715 (N.D. Tex. 2000), *aff'd*, 244 F.3d 134 (5th Cir. 2000); *Henderson v. Fort Worth*

---

[4] Plaintiffs Mark Miller, Michele Gangnes, Scott Copeland, Laura Palmer, Tom Kleven, and Andy Prior are, collectively, the "Voter Plaintiffs."

*Indep. Sch. Dist.*, 526 F.2d 286, 288 n.1 (5th Cir. 1976).  In fact, voters have standing to challenge ballot access laws even in cases where there is no candidate-plaintiff.  *See*, *e.g.*, *Erum v. Cayetano*, 881 F.2d 689, 691 (9th Cir. 1989) (plaintiff had standing to challenge ballot access restrictions "in his capacity as a registered *voter*," even if he lacked standing as a candidate) (emphasis original) (overruled on other grounds); *McLain v. Meier*, 851 F.2d 1045, 1048 (8th Cir. 1988) (same); *Bachur v. Democratic Nat. Party*, 836 F.2d 837, 839 (4th Cir. 1987) (voter had standing to challenge political party's rules for selecting delegates to national convention).

### 1.    The Voter Plaintiffs Have Alleged Concrete Injuries.

Plaintiffs allege that the Texas statutory scheme systematically violates their rights to "campaign for, speak and associate with, and vote for candidates that must be nominated by convention or nomination petition" by imposing severe burdens and costs that make it all but impossible for non-wealthy Independents and Non-Primary Parties to participate in Texas's elections and for the Voter Plaintiffs to vote for them.  (Am. Comp. ¶¶ 1, 5-10, 69, 78, 83.)  In addition, the Voter Plaintiffs allege a desire to vote for candidates that must be nominated by convention or nomination petition, including Independents, and that they are "harmed by the lack of such candidates on Texas's general election ballot."  (Am. Comp. ¶¶ 5-10.)  These allegations sufficiently allege a concrete injury, and Defendants do not attempt to dispute them.  *See McLain*, 851 F.2d at 1048 (a voter is injured when ballot access laws "restrict his ability to vote for the candidate of his choice or dilute the effect of his vote if his chosen candidate were not fairly presented to the voting public").

Defendants argue that to allege injury the Voter Plaintiffs must identify a specific independent candidate in a specific election for whom they wish to vote.  (Mot. at 8-9.)  That is incorrect and ignores a long line of contrary authorities.  *See McLain*, 851 F.2d at 1048 (voter-plaintiff had standing to challenge ballot access laws where no candidate was specified);

*Libertarian Party of S. Dakota v. Krebs*, 290 F. Supp. 3d 902, 909 (D.S.D. 2018) (same); *Walker v. Barnett*, No. CIV 18-4015, 2019 WL 1428723, at *3 (D.S.D. Mar. 29, 2019) (same). The Voter Plaintiffs' are injured when their freedom of choice is restricted by the absence of Independent and Non-Primary Party candidates in an election cycle. (Am. Comp. ¶ 1 (alleging that Texas has denied voters their right to cast their votes effectively "for the last 50 years").) The Voter Plaintiffs have thus alleged a "concrete and particularized" injury.

> 2.    The Voter Plaintiffs' Injuries Are Traceable to Defendants and Can be Redressed.

Plaintiffs allege that Defendants are "responsible for administering and enforcing the Texas Election Code, including the provisions challenged herein." (Am. Comp. ¶¶ 15-16.) That code, and its enforcement by Defendants, "heavily burden[s]" Plaintiffs right to speak, associate, and cast their votes effectively by excluding Independents and Non-Primary Party candidates from Texas's general election ballot. *See Williams*, 393 U.S. at 30-31; (Am. Comp. ¶¶ 5-10, 67-78.) Plaintiffs' injuries, therefore, are directly traceable to Defendants' conduct.

Plaintiffs' injuries can be redressed by the relief requested in the Amended Complaint. A declaratory judgment that the challenged ballot access provisions are unconstitutional and a permanent injunction against enforcement of those laws until Defendants can apply constitutionally-sound requirements would give candidates who align with the Voter Plaintiffs' principles a place on the ballot and allow the Voter Plaintiffs to vote for candidates of their choice. *See McLain*, 851 F.2d at 1048; *Libertarian Party of S. Dakota*, 290 F. Supp. 3d at 909. Accordingly, the Voter Plaintiffs have standing in their capacity as registered voters.[5]

---

[5] Defendants' assertion that Plaintiffs lack standing to challenge § 202.007 fails for the same reason. Plaintiffs have standing to challenge that provision in their capacity as voters. (Mot. at 10 n.9.)

B.     Plaintiff Mark Miller Has Standing to Challenge the Independent
       Candidate Requirements.

Defendants' challenge of Plaintiff Miller's standing rests primarily on their misunderstanding of a single case. (Mot. at 9 (quoting *Kennedy v. Pablos*, No. 1:16-CV-1047-RP, 2017 WL 2223056, at *7 (W.D. Tex. May 18, 2017)).) In *Kennedy*, the Court held that Texas's "sore loser" statute barred the plaintiff, who had unsuccessfully sought the Democratic Party's nomination in the 2016 presidential election, from running as an independent candidate in the same election. 2017 WL 2223056, at *3. The Court further held that, because he was legally barred from accessing the ballot, the plaintiff lacked standing to challenge the constitutionality of the independent candidate requirements. *See id.* at *6 (citing *Storer*, 415 U.S. at 737 ("[I]f a candidate is absolutely and validly barred from the ballot by one provision of the laws, he cannot challenge other provisions as applied to other candidates")). The plaintiff then sought leave to amend the complaint, alleging that he wanted to run for president again in 2020, and "wishe[d] to preserve his ballot access options" for that year. *Id.* (internal quotation marks and citation omitted). Under those particular circumstances, the Court found the candidate's injury too "speculative" to support standing. *Id*. at *7.

Defendants argue that the court's decision in *Kennedy* is applicable to all candidates. (Mot. at 9 (asserting that Plaintiff Miller lacks standing to challenge independent candidate requirements unless he has "committed" to run as an Independent).) Their argument, however, is premised on cherry-picked language that is quoted out of context. The Court's concern in *Kennedy* was that the candidate's vague allegations demonstrated the possibility, if not probability, that he would either be "absolutely and validly barred from the ballot," *Storer*, 415 U.S. at 737, or that he would incur no injury at all – both of which would deprive him of standing. These unusual circumstances do not apply here.

7

1.    <u>Plaintiff Miller Has Alleged Concrete Injuries.</u>

Plaintiff Miller alleges that Texas's statutory scheme chills him from the free exercise of his First Amendment freedoms of speech, petition, and association by running as an independent candidate or nominee of a Non-Primary Party. (Am. Comp. ¶ 5.) Miller further alleges a concrete and particular injury in that he seeks to campaign for, speak and associate with and vote for Independents and Non-Primary Party candidates, but the lack of such candidates on Texas's general election ballot prevents him from doing so. (Am. Comp. ¶ 5.)

Miller's past ability to run for office as the nominee of LPTX has no bearing on his standing here, as his alleged intention or ability to run as an Independent must be taken at face value at this stage of the pleadings.[6] *See Williamson*, 645 F.2d at 412; *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357-60 (3rd Cir. 2014) (reversing dismissal under Rule 12(b)(1) where defendant asserted a facial attack and district court improperly rejected plaintiffs' allegations that statutory scheme chilled the free exercise of their constitutional rights); *see also Dekom v. New York*, No. 12-CV-1318 JS ARL, 2013 WL 3095010, at *10 (E.D.N.Y. June 18, 2013), *aff'd*, 583 F. App'x 15 (2d Cir. 2014) ("[S]everal courts have held that potential candidates need-not have complied with election law provisions in order to have standing to challenge the constitutionality of those laws") (citing cases).

2.    <u>Plaintiff Miller's Injury Is Traceable to Defendants and Can Be Redressed.</u>

Miller's injury is traceable to Defendants' enforcement of the ballot access requirements.

---

[6] Defendants concede that they assert a "facial" challenge to Plaintiff's standing, not a "factual" one. (Mot. at 3 n.8.) Therefore Defendants' assertion that Plaintiff Miller asserts nothing more than a "subjective chill" (Mot. at 9-10) must be rejected. *Compare* (Am. Comp. ¶ 5) *with* (Mot. at 9-10) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013), a case decided on summary judgment). *See Lujan*, 504 U.S. at 561-62 ("[S]tanding depends considerably upon whether the plaintiff is himself an object of the action.... If he is, there is ordinarily little question that the action or inaction has caused him injury....").

8

(Am. Comp. ¶¶ 44-78.)   A declaratory judgment that the challenged statutory provisions are unconstitutional and a permanent injunction against the enforcement of those laws until Defendants can apply constitutionally-sound requirements would redress Miller's harms by allowing him an opportunity to achieve ballot access.

## II.   Defendants Fail to Provide Grounds for Dismissal under Rule 12(b)(6).

Rule 12(b)(6) motions test whether a complaint contains "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *YETI Coolers LLC v. JDS Indus., Inc.*, 300 F. Supp. 3d 899, 904 (W.D. Tex. 2018) (quoting *Iqbal*, 556 U.S. at 678).  A Rule 12(b)(6) motion therefore must address the specific allegations that the movant argues are deficient.  It cannot generically seek dismissal of claims that the motion fails to address. Defendants fail to challenge the sufficiency of Plaintiffs' factual allegations except with respect to a single statutory provision.   Apart from that provision, Defendants either ignore Plaintiffs' allegations or would have the court treat Defendants' motion as one for summary judgment and rule that Plaintiffs' claims are barred by precedent.  (Mot. at 1.)  Dismissal is not available under these circumstances.

### A.   Plaintiffs Have Adequately Pled their Constitutional Claims.

Plaintiffs have adequately pled violations of their First and Fourteenth Amendment rights by alleging: (a) Texas's obsolete, 114-year-old nomination petition procedure imposes severe burdens on Independents and Non-Primary Parties (Am. Comp. ¶¶ 53-63); (b) the cost of complying with that procedure functions as a *de facto* financial barrier to participation in Texas's elections (Am. Comp. ¶¶ 64-66); (c) Texas imposes unequal burdens on Independents and Non-Primary Parties by requiring them to bear the cost of complying with the obsolete procedures they must follow, while guaranteeing political parties that nominate by primary election ("Primary

9

Parties") automatic access to the general election ballot at taxpayer expense; and (d) Texas can protect its legitimate interests by less burdensome, more narrowly tailored alternatives.  (Am. Comp. ¶¶ 24-28, 67-68, 75, 77, 79-82.)  These allegations are supported by specific facts.  (*E.g.*, Am. Comp. ¶ 65 (alleging that statewide Independents and Non-Primary Parties have been unable to complete a successful nomination petition drive in recent decades "except by spending substantial funds"); Am. Comp. ¶ 67 (alleging that such an effort "will be all but impossible" in 2020 "without spending hundreds of thousands of dollars.").)

Taken together, these and other allegations in the Amended Complaint amply support Plaintiffs' claim that Texas's ballot access scheme, as currently applied, violates their First and Fourteenth Amendment rights to cast their votes effectively, to speak and associate for political purposes, and to equal protection of law, by making it all but impossible for non-wealthy Independents and Non-Primary Parties to run for election.  (Am. Comp. ¶¶ 1, 78.)  These allegations also support Plaintiffs' claims that Texas's statutory scheme unconstitutionally imposes a financial burden on Independents and Non-Primary Parties that is "patently exclusionary in character, and therefore discriminates on the basis of wealth."  (Am. Comp. ¶ 83 (citing *Bullock*, 405 U.S. at 143).)  Plaintiffs, therefore, state claims for relief that are plausible on their face, which is all they must do to survive dismissal under Rule 12(b)(6).  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 720 (W.D. Tex. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

B.    Defendants Fail to Challenge the Sufficiency of Plaintiffs' Allegations.

Defendants fail to address Plaintiffs' detailed allegations regarding the severe burdens that the Texas Election Code imposes upon Independents, Non-Primary Parties and the voters who

wish to associate with and support them.  (Am. Comp. ¶¶ 53-78.)  They also ignore Plaintiffs' allegations that Texas may protect its legitimate interests through less burdensome, more narrowly tailored alternatives.  (Am. Comp. ¶¶ 79-82.)  Rather than challenging the sufficiency of these allegations, as they must do to prevail under Rule 12(b)(6), Defendants resort to generic assertions that Plaintiffs' "legal arguments" are "foreclosed" by Fifth Circuit and Supreme Court cases that were decided on summary judgment or following trial.[7]  (Mot. at 1.)  Such tactics are insufficient to support dismissal under Rule 12(b)(6).[8]

As the Supreme Court has repeatedly observed, constitutional challenges to state election laws "cannot be resolved by any 'litmus-paper test' that will separate valid from invalid restrictions." *Anderson*, 460 U.S. at 789 (quoting *Storer* 415 U.S. at 730).[9]  Instead, "[e]ach case must be resolved on its own facts, after due consideration is given to the practical effect of election laws of a given state, *viewed in their totality*." *Nader*, 332 F. Supp. 2d at 988 (emphasis added) (citing *Clements v. Fashing*, 457 U.S. 957, 963 (1982)).  Consequently, dismissing Plaintiffs' claims without addressing the specific allegations on which they rely or the availability of less burdensome alternatives runs afoul of the Supreme Court's *Anderson/Burdick* framework.  *See Anderson*, 460 U.S. at 789 ("Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional").

---

[7] (Mot. at 1, 6, 7, 14-20 (citing *Am. Party of Tex.v. White*, 415 U.S. 767, 771 (1974) (trial); *Texas Indep. Party v. Kirk*, 84 F. 3d 178, 182 (5th Cir. 1996) (summary judgment); *Nader*, 332 F. Supp. 2d at 986 (trial)).

[8] Although Defendants suggest that this case may be dismissed based on "a dispositive issue of law," they do not and cannot identify any such issue.  (Mot. at 5 (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).)

[9] Courts analyze the constitutionality of ballot access laws under the familiar "*Anderson/Burdick*" framework.  *See Nader*, 332. F. Supp. at 987-88 (citing *Anderson*, 460 U.S. at 789; *Burdick*, 504 U.S. at 434).

Moreover, Plaintiffs contend that the statutory provisions they challenge are "unconstitutional as applied in combination with one another."  (Am. Comp. ¶¶ 1, 89, 90, 92.)  Defendants entirely fail to address this claim.  Instead, they discuss each challenged provision separately and assert that, standing alone, the provision is not unconstitutional.  (Mot. at 10-20.)  Once again, Defendants run afoul of Supreme Court and Fifth Circuit precedent, which recognizes that "a number of facially valid provisions … may operate in tandem to produce impermissible barriers to constitutional rights."  *Pilcher*, 853 F.2d at 336 (quoting *Storer*, 415 U.S. at 737).  That is precisely what Plaintiffs assert, and Defendants' failure to address that claim means their Rule 12(b)(6) motion must fail.

       1.       <u>Defendants Fail to Provide Grounds for Dismissal of Plaintiffs' Claim that Texas's Nominating Petition Procedure Violates Their First and Fourteenth Amendment Rights.</u>

Plaintiffs have stated a valid claim that Texas's nominating petition procedure violates their First and Fourteenth Amendment rights.  They provide factual bases to show that the procedure imposes severe and unequal burdens on them (Am. Comp. ¶¶ 53-67); that it is not sufficiently tailored to advance the state's interests (Am. Comp. ¶ 79); and that the state could adopt less burdensome alternatives.  (Am. Comp. ¶¶ 80-81.)  These allegations are not only sufficient to state a claim under the *Anderson/Burdick* framework, but if proven, would require invalidation of the challenged provisions.  *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

Defendants do not dispute the sufficiency of the foregoing allegations, but simply argue that the state may "require verification that signatures are genuine and signers are eligible to sign." (Mot. at 15.)  Plaintiffs, however, do not allege that the state may not protect its interest in ensuring the integrity of the ballot.  Because Plaintiffs' challenge to Texas's nomination petition procedure

in no way depends on such an allegation, Defendants' motion fails to provide any basis for dismissal of that claim.

Furthermore, Plaintiffs' challenge to the nomination petition procedure goes to the heart of their claims that Texas's statutory scheme is unconstitutional.  They allege that, as applied in combination with Texas's signature requirements and other provisions, the procedure "functions as a *de facto* financial barrier" to Independents and Non-Primary Parties in Texas's elections.  (Am. Comp. ¶ 64.)  If proven, that claim would render Texas's statutory scheme unconstitutional under a well-settled line of precedent holding that "a system that utilizes the criterion of ability to pay as a condition of being on the ballot, thus excluding some candidates otherwise qualified and denying an undetermined number of voters the opportunity to vote for candidates of their choice" violates the Equal Protection Clause absent proof from the state of its necessity.  *Bullock*, 405 U.S. at 149; *see Lubin v. Panish*, 415 U.S. 709, 718 (1974).  Because Defendants entirely fail to address that claim, their motion cannot possibly support its dismissal.

2. <u>Defendants Fail to Provide Grounds for Dismissal of Plaintiffs' Claim that Texas's Non-Primary Party Requirements Violate Their First and Fourteenth Amendment Rights.</u>

Defendants' motion to dismiss Plaintiffs' challenge to Texas's Non-Primary Party requirements suffers from the same defects.  Defendants do not dispute the sufficiency of Plaintiffs' allegations, but only offer a defense on the merits.  (Mot. at 15-20.)  At the pleadings stage, however, Defendants' insistence that the challenged provisions "are constitutional" is premature.  (Mot. at 16.)  The Court cannot decide this issue on the pleadings because it requires

consideration of the specific facts and evidence Plaintiffs will present in support of their claims.[10]
*See Anderson*, 460 U.S. at 789; *Storer*, 415 U.S. at 742; *Nader*, 332 F. Supp. 2d at 988.

Plaintiffs allege that § 181.005(a), which requires that Non-Primary Parties hold precinct conventions attended by participants equal in number to one percent of the entire vote cast for governor in the preceding election, is so burdensome that no Non-Primary Party has complied with it in at least 50 years. (Am. Comp. ¶ 33.) That allegation supports Plaintiffs' claim that § 181.005(a) is unconstitutional as applied in combination with the other challenged provisions. *See Storer*, 415 U.S. at 742 ("past experience" helps to evaluate the constitutionality of a challenged provision). Although Defendants insist that § 181.005(a) has been "upheld" and should "survive constitutional scrutiny" here, they do not dispute that Plaintiffs have pleaded sufficient facts to state a claim as to that provision.

Defendants similarly assert that § 181.006, the provision that requires Non-Primary Parties to submit nomination petitions if they fail to comply with § 181.005(a), is constitutional because it was upheld 45 years ago in *American Party of Texas v. White*, 415 U.S. 767 (1974). (Mot. at 18.) Again, Defendants' challenge does not go to the sufficiency of Plaintiffs' pleadings, but to the merits of their claim. Such an approach does not support dismissal under Rule 12(b)(6). Defendants' blind reliance on *American Party of Texas* is misplaced, as the relevant facts and circumstances have materially changed: 45 years ago, the one-percent requirement translated to only 22,000 signatures; in 2020, a candidate will need 83,717 signatures – and these signatures still must be collected by hand despite the fact that, in an Internet age, less burdensome alternatives

---

[10] Nor does Defendants' enumeration of "important" and "vital" state interests provide the basis for dismissal (Mot. at 17), because the Court must balance those interests against the burden they impose on Plaintiffs' constitutional rights and determine "the extent to which those interests make it necessary" to impose such burdens. *Anderson*, 460 U.S. at 789. That analysis cannot be conducted solely on the face of the Amended Complaint.

are available.  *See Am. Party of Tex.*, 415 U.S. at 777; (Am. Comp. ¶¶ 32, 80-81.)  Plaintiffs make numerous allegations demonstrating that the burden of complying with that requirement has drastically increased since *American Party of Texas* was decided.  (Am. Comp. ¶¶ 53-78.)  Because Plaintiffs are entitled to present evidence to support those allegations, Defendants' assertion that the Supreme Court has "rejected" Plaintiffs' "arguments" is, again, insufficient to support dismissal under Rule 12(b)(6).

Likewise, Defendants do not challenge the sufficiency of Plaintiffs' allegations relating to the new filing fee or nomination petition requirements that Texas adopted in June 2019.  (Am. Comp. ¶¶ 40-43, 63, 68, 79); *see* § 141.041.  Rather, Defendants assert that "Plaintiffs' argument against § 141.041 lacks any legal support…."  (Mot. at 17.)  Defendants' mere assertion that a claim (or "argument") lacks legal support is insufficient to support dismissal under Rule 12(b)(6).

Defendants similarly fail to assert any grounds for dismissing Plaintiffs' challenge to the statutory provisions that give Primary Parties "a first, exclusive right to solicit voters' support," at a time when Independents and Non-Primary Parties are "prohibited by law from formally affiliating with them."  (Am. Comp. ¶ 35 (citing §§ 162.001, 162.003, 162.012, 162.014, 181.006(g),(j)); Am. Comp. ¶ 46 (citing § 142.009); Am. Comp. ¶ 51 (citing § 192.032(g)).)  These provisions deprive Plaintiffs of their right to equal protection of the law (Am. Comp. ¶ 73),[11] but Defendants disregard that claim entirely as it applies to Independents, and merely acknowledge the claim as it applies to Non-Primary Parties, without asserting any reason why it should be dismissed.  (Mot. at 16 n.18.)  Instead, Defendants merely note that voters may affiliate with Non-Primary Parties at their conventions.  (Mot. at 16 n.18 (citing § 162.007).)

---

[11] The equal protection violation arises because Texas provides Primary Parties "an exclusive statutory right to affiliate with voters, before Independents and Non-Primary Parties are permitted to do so."  (Am. Comp. ¶ 73.)

Defendants attempt to minimize the most burdensome requirements that Texas imposes on Non-Primary Parties by misleadingly referring to them as "three paths for guaranteed minor party ballot access…." (Mot. at 18 (citing §§ 181.005(a), 181.005(c), 181.006).) That description is inaccurate and irrelevant. Plaintiffs allege that each of these provisions, as applied in combination with the others challenged herein, contributes to the severe burden that Texas's statutory scheme imposes on their First and Fourteenth Amendment rights.[12] (Am. Comp. ¶¶ 53-71, 73-77.) Defendants do not challenge the sufficiency of these allegations.

3. <u>Defendants Fail to Provide Grounds for Dismissal of Plaintiffs' Claim that the Requirements for Independent Presidential Candidates Violate Their First and Fourteenth Amendment Rights.</u>

Defendants do not challenge the sufficiency of Plaintiffs' claim against Texas's ballot access requirements for independent presidential candidates. Instead, relying almost entirely on the district court's decision in *Nader*, as summarily affirmed by the Fifth Circuit, Defendants assert that "[t]he Fifth Circuit has already upheld these provisions against the same arguments Plaintiffs urge here." (Mot. at 11, 13 (Defendants request the Court to "dismiss Plaintiffs' challenge" to those provisions "[j]ust as the Fifth Circuit did in *Nader*.").) The Court should decline Defendants' request for three reasons.

First, Plaintiffs challenge the requirements applicable to independent presidential candidates as applied in conjunction with several statutory provisions that were not challenged in *Nader* – most notably including (but not limited to) the provisions governing the procedures by which Independents must obtain signatures on paper nomination petitions and the provision that

---

[12] Although Plaintiffs allege that the requirement for a Non-Primary Party to retain ballot access contributes to the totality of the burden imposed by Texas's statutory scheme (Am. Comp. ¶ 71), Plaintiffs do not challenge the constitutionality of the requirement imposed by § 181.005(c), nor do they request its invalidation. (Am. Comp. ¶ 93A.)

prohibits voters from signing an independent presidential candidate's nomination petition before the date of the presidential primary election. (Am. Comp. ¶¶ 93B (citing §§ 141.063, 141.064, 141.065, 192.032(g)).) Further, Plaintiffs support these claims with detailed allegations of fact that go far beyond the facts alleged in *Nader*. (*E.g.*, Am. Comp. ¶¶ 53-62, 64-69, 72-77.) The totality of Plaintiffs' asserted claims and alleged facts are distinct from those raised by the plaintiffs in *Nader*.[13]

Second, *Nader* is further distinguishable because it arose in the context of the 2004 presidential election and was decided on an expedited basis, with imminent election deadlines looming. Having been denied ballot access, the independent candidate plaintiff and his supporters filed suit to challenge, *inter alia*, the signature requirement and filing deadlines imposed by §§ 192.032(c) and (d), and they requested preliminary and permanent injunctive relief as necessary to place the candidate on Texas's 2004 general election ballot. *See Nader*, 332 F. Supp. 2d at 983-84. By contrast, Plaintiffs assert claims based on a 50-year history of increasingly severe and unequal burdens on their constitutional rights, including the now-prohibitive cost of mounting a successful petition drive, which Plaintiffs allege to be unconstitutional under *Bullock*. (Am. Comp. ¶¶ 1, 64-78, 83); *see Bullock*, 405 U.S. at 143. Plaintiffs allege that cost has skyrocketed because the number of signatures required by § 192.032(d) has nearly doubled in the 15 years since *Nader* was decided, while the time permitted for collecting them remains fixed. *Compare Nader*, 332 F. Supp. 2d at 984 (45,540 signatures required in 2004) *with* Am. Comp. ¶ 49 (89,692 signatures

---

[13] Additionally, *Nader* relies on a significant error of fact that undermines its rationale. The Court incorrectly found that a political party's presidential nominees "must file an application with the party by 5:00 p.m. on January 2...." *Nader*, 332 F. Supp. 2d at 989 (citing §§ 181.031-033). In fact, a party's presidential nominees must comply with § 192.031, which does not require the filing of such an application. The Court expressly relied on this factual error to support its legal conclusion that an independent presidential candidate "enjoys more flexibility" than a partisan presidential candidate. *See id.*

required in 2020).  This factual distinction alone shows that *Nader* cannot serve as a basis for dismissing Plaintiffs' claims at the pleadings state, as Defendants suggest.  As *Nader* itself recognizes, "each case must be resolved on its own facts…."  *Nader*, 332 F. Supp. 2d at 988.

Third, contrary to Defendants' contention, the *Nader* court did not "dismiss" the plaintiffs' challenge to the statutory provisions.  (Mot. at 13.)  Rather, the court conducted a trial, permitting the plaintiffs to present evidence, including witness testimony relating to the burdens that the challenged provisions imposed on them.  *See Nader*, 332 F. Supp. 2d at 986.  *Nader* demonstrates why Defendants' motion should be denied.  Plaintiffs have properly stated a claim against the independent presidential candidate requirements and they are entitled to present evidence in support of those claims.  *See id*.[14]

4.   Defendants Fail to Provide Grounds for Dismissal of Plaintiffs' Claim that the Requirements for Independent Candidates for Statewide Office Violate Their First and Fourteenth Amendment Rights.

Defendants' motion to dismiss Plaintiffs' challenge to the requirements for independent candidates for statewide office should be denied.  Defendants do not dispute that Plaintiffs state a valid claim as to these provisions.  Instead, Defendants incorrectly assert that Plaintiffs' claim is not "plausible" because the Fifth Circuit previously upheld certain provisions that apply to independent presidential candidates.  (Mot. at 14 (citing *Tex. Indep. Party v. Kirk*, 84 F. 3d 178, 180-81, 185-87 (5th Cir. 1996).)

The independent candidate plaintiffs in *Texas Independent Party* did not challenge the same set of statutory provisions that Plaintiffs challenge here.  Instead, those plaintiffs challenged §§ 142.002 and 142.006, the statutory provisions establishing the deadlines for filing declarations

---

[14] Defendants' passing reference to *Faas v. Cascos*, 225 F. Supp. 3d 604 (S.D. Tex. 2016), is even more clearly distinguishable than *Nader*, because the plaintiffs pled few if any specific facts to support their conclusory allegations.  *See Faas*, 225 F. Supp. 3d at 608-09.

of intent and nomination petitions.  *See Tex. Indep. Party*, 84 F. 3d at 180.  Their "sole contention" was "that these deadlines come too early."  *Id.* at 185.  Here, by contrast, Plaintiffs assert that the filing deadlines are unconstitutional as applied in combination with several other provisions, including but not limited to the signature requirement imposed by § 142.007, the prohibition against circulating nomination petitions before the primary election imposed by § 142.009, and provisions governing the procedures by which Independents must obtain signatures on paper nomination petitions.  (Am. Comp. ¶¶ 53-62, 64-69, 72-77.93B.)  Because *Texas Independent Party* did not address Plaintiffs' claim, much less the factual allegations supporting it, that case cannot support dismissal here.  *See Pilcher*, 853 F.2d at 336 (quoting *Storer*, 415 U.S. at 737).[15]

In addition, *Texas Independent Party* was decided on summary judgment.  *See Tex. Indep. Party*, 84 F. 3d at 182.  As in *Nader* – and unlike the instant case – the plaintiffs in *Texas Independent Party* had the opportunity to take discovery and submit evidence in support of their claims.  Consequently, *Texas Independent Party* contradicts rather than supports Defendants' contention that dismissal under Rule 12(b)(6) is proper here.

5.   Defendants Challenge the Sufficiency of Plaintiffs' Allegations Regarding Only One Provision of the Texas Election Code.

Defendants specifically challenge only one aspect of Plaintiffs' factual allegations, namely, the validity of § 181.077(b), which authorizes Defendants to wait until 68 days before the general election to certify Plaintiffs' nomination petitions. (Mot. at 17.)  Defendants incorrectly assert that Plaintiffs fail to identify any harm that results from this delay.  (Mot. at 17.)  Plaintiffs, in fact, allege that this delay "prevents them from campaigning, fundraising and competing as ballot-

---

[15] Defendants misconstrue the holding in *Meyer v. Texas,* Civ. No. H-10-3860, 2011 WL 1806524, at *3 (S.D. Tex. May 11, 2011).  (Mot. at 7.)  That case, a *pro se* action filed by an independent candidate for U.S. House, involved the challenge of Texas's straight-ticket voting procedure, not the ballot access requirements for independent candidates.

qualified contenders during that critical time.  In effect, Texas's statutory scheme shortens the general election for Independents and Non-Primary Parties to just 68 days," (Am. Comp. ¶ 75), whereas Primary Party nominees are recognized as officially ballot-qualified as soon as the primary election results are certified.  Although Defendants insist this has "no impact" on Plaintiffs (Mot. at 17), Plaintiffs' allegation must be accepted as true at this stage.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss this action pursuant to Rules 12(b)(1) and 12(b)(6) should be denied.

Dated: August 22, 2019

Respectfully submitted,

David P. Whittlesey
State Bar No. 00791920
**SHEARMAN & STERLING LLP**
111 Congress Avenue, Suite 1700
Austin, TX 78701
Email: david.whittlesey@shearman.com
Tel: +1 (512) 647-1900
Fax: +1 (512) 647-1899

Oliver Hall
*Pro hac vice*
Center for Competitive Democracy
P.O. Box 21090
Washington, DC, 20009
Email: oliverhall@competitivedemocracy.org
Tel: +1 (202) 248-9294

Christopher Ryan
*Pro hac vice*
Michael P. Mitchell
*Pro hac vice*
Anna Stockamore
*Pro hac vice*
**SHEARMAN & STERLING LLP**
401 9th St. N.W., Suite 800
Washington, D.C. 20004
Email: cryan@shearman.com
       michael.mitchell@shearman.com
       anna.stockamore@shearman.com
Tel: +1 (202) 508-8000
Fax: +1 (202) 508-8001

*Attorneys for Plaintiffs*

20

**CERTIFICATE OF SERVICE**

I certify that on August 22, 2019, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

David P. Whittlesey