IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MARK MILLER, MICHELLE GANGES, SCOTT COPELAND, LAURA PALMER, TOM KLEVEN, ANDY PRIOR, AMERICA'S PARTY OF TEXAS, CONSTITUTION PARTY OF TEXAS, GREEN PARTY OF TEXAS, and LIBERTARIAN PARTY OF TEXAS,<br>   *Plaintiffs*,<br><br>v.<br><br>JOHN OR JANE DOE, in his or her official capacity as the Secretary of State of Texas, and JOSE A. "JOE" ESPARZA, in his official capacity as the Deputy Secretary of State of the State of Texas,<br>   *Defendants.* | § § § § § § § § § § § § § § § § § § | No. 1:19-cv-00700-RP |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Plaintiffs' response in opposition to Defendants' motion to dismiss misunderstands the standards for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and fails to appreciate the power of binding precedent. Defendants respectfully submit this reply in support of their motion to dismiss (Dkt. 16) and request that the Court dismiss this case under Rules 12(b)(1) and 12(b)(6) for the reasons outlined in that motion and those stated here.

  **I.**  **Plaintiffs lack standing to challenge the ballot access requirements applicable only to independent candidates.**

Defendants' motion to dismiss explains why the desire to vote for an unidentified, hypothetical future candidate or run for an unidentified office in an unspecified future election does not confer standing to challenge ballot access laws. Dkt. 16 at 8-9. Plaintiffs disagree, insisting that "courts routinely recognize that voters—and not just political candidates or political parties—have standing to challenge ballot access laws for constitutional violations." Dkt. 17 at 5. It is true that voter plaintiffs with a *specific* desire to engage in a particular course action can establish standing. But the cases

1

Plaintiffs cite for their novel theory that merely being a voter confers standing to challenge any ballot access law are distinguishable[1] and not binding upon this Court. Plaintiffs' challenge to provisions for independent candidates should be dismissed under Rule 12(b)(1) because they lack standing.

## II. This case should be dismissed under Rule 12(b)(6) because—taking all of Plaintiffs' allegations as true—existing caselaw squarely forecloses their claims.

Even if Plaintiffs had standing, their Response cannot overcome dismissal under Rule 12(b)(6). At the outset, it is important to note that Plaintiffs' repeated assertion that they are entitled to the "development of a factual record," Dkt. 17 at 2, before their case may be dismissed misunderstands the 12(b)(6) standard.[2] Indeed, if this were true, Rule 12(b)(6) would have no purpose. In fact, "courts are required to dismiss, pursuant to [Rule 12(b)(6)], claims based on invalid legal theories, even though they may be otherwise well-pleaded." *Flynn v. State Farm Fire & Cas. Ins. Co. (Texas)*, 605 F. Supp. 2d 811, 820 (W.D. Tex. 2009) (citing *Neitzke v. Williams*, 490 U.S. 319 (1989)). *See also Neitzke v. Williams*, 490 U.S. at 326—27 (noting that Rule 12(b)(6), by "operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and factfinding" where a case may be dismissed based upon "dispositive issue[s] of law"). Thus,

---

[1] Dkt. 17 at 5 cites *Erum v. Cayetano*, 881 F.2d 689, 691 (9th Cir. 1989); *McLain v. Meier*, 851 F.2d 1045, 1048 (8th Cir. 1988); and *Bachur v. Democratic Nat. Party*, 836 F.2d 837, 839 (4th Cir. 1987). These (non-controlling) cases rely upon (controlling) Supreme Court cases concluding that voters have standing to challenge "ballot access restrictions *on the candidate of their choice*." *McLain v. Meier*, 851 F.2d at 1048 (citing *Anderson v. Celebrezze*, 460 U.S. 780, 786 (1983) (supporters of independent candidate have standing to challenge Ohio ballot access laws); *Bullock v. Carter*, 405 U.S. 134, 143 (1972) (voter has standing to challenge constitutionality of filing fee requirement which directly affects candidate). These Supreme Court cases a specific desired action to show voter standing, and Plaintiffs have alleged none.
[2] *See also, e.g.*, Dkt. 17 at 12-13 ("Defendants' insistence that the challenged provisions 'are constitutional' is premature. The Court cannot decide this issue on the pleadings because it requires consideration of the specific facts and evidence Plaintiffs will present in support of their claims"); 15 ("Because Plaintiffs are entitled to present evidence to support [their] allegations, Defendants' assertion that the Supreme Court has 'rejected' Plaintiffs' 'arguments' is, again, insufficient to support dismissal under Rule 12(b)(6)").

"development of a factual record" is a privilege of a litigant who survives a motion to dismiss under Rule 12(b)(6)—not a prerequisite to dismissal of a complaint. *Contra* Dkt. 17 at 2.

And it is far from unusual for courts to resolve challenges to the Texas Election Code at the 12(b) stage based on dispositive issues of law. *See, e.g.*, *Faas v. Cascos*, 225 F. Supp. 3d 604, 607 (S.D. Tex. 2016) (granting motion to dismiss First and Fourteenth Amendment challenge to TEX. ELEC. CODE §§ 141.031(a)(4)(K), 146.025(a)(1), 192.032(a), (b)(1)(B), (b)(3)(A), (b)(3)(B), (c), (d), (f), (g) & 192.033(a)); *Kennedy v. Pablos*, No. 1:16-CV-1047-RP, 2017 WL 2223056, at *8 (W.D. Tex. May 18, 2017) (granting motion to dismiss presidential candidate's challenge to TEX. ELEC. CODE § 192.032); *Meyer v. Texas*, No. CIV.A. H-10-3860, 2011 WL 1806524, at *3 (S.D. Tex. May 11, 2011) (granting motion to dismiss challenge to TEX. ELEC. CODE §§ 142.007, 142.008, & 141.066 as applied to independent candidate who wished to appear on the ballot for federal office).

The question before the Court under Rule 12(b)(6) is whether the Amended Complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 5520 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). And, importantly here, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" like those throughout Plaintiffs' response. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### A. Plaintiffs allege no facts which render Texas's nominating petition procedure—which has been upheld as constitutional—unconstitutional as applied to them.

Plaintiffs argue that Texas's nominating petition procedure "'utilizes the criterion of ability to pay as a condition of being on the ballot, thus excluding some candidates otherwise qualified and

3

denying an undetermined number of voters the opportunity to vote for candidates of their choice,'" in violation of the Equal Protection Clause. Dkt. 17 at 13 (citing *Bullock v. Carter*, 405 U.S. at 149; *Lubin v. Panish*, 415 U.S. 709, 718 (1974)). This objection fails because it ignores key provisions of Texas law. Indeed, Texas does *not* use the ability to pay a filing as a condition of being on the ballot. Rather, Texas furthers its important interest in limiting the ballot to serious candidates who demonstrate some public support by requiring *either* a filing fee *or* a nominating petition. *See* TEX. ELEC. CODE § 141.041. Supreme Court precedent—including the sole authorities Plaintiffs invoke to support their argument on this point—explicitly permit this, including for litigants similarly situated to the Plaintiffs.

In *Bullock v. Carter*, the Court concluded that a state violates the Equal Protection Clause by "providing *no reasonable alternative* means of access to the ballot" other than paying a filing fee—a fact which was "critical to [the Court's] determination of constitutional invalidity." 405 U.S. at 149 (emphasis added). Such a system violates equal protection, the Court concluded, because office seekers could be "precluded from seeking the nomination of their chosen party, no matter how qualified they might be, *and no matter how broad or enthusiastic their popular support*." *Id.* at 143. This stands in stark contrast to Texas's system, which provides the petition alternative for candidates who are qualified and have a modicum of popular support but lack financial resources.

Nevertheless, Plaintiffs argue that Texas's nominating petition procedure operates as a "de facto financial barrier" to ballot access because "[p]aid petition circulators typically charge a per-signature fee for their services," which Plaintiffs estimate will result in "a successful petition drive in 2020" costing "more than $600,000." Dkt. 14 ¶56. But there is no requirement that nominating petitions be completed via paid petition circulators. And the Supreme Court has acknowledged that "[e]ven in this day of high-budget political campaigns some candidates have demonstrated that direct contact with thousands of voters by 'walking tours' is a route to success." *Lubin*, 415 U.S. at 717.

4

In *Lubin*—the other case Plaintiffs cite—the Supreme Court considered California's requirement that all candidates pay a filing fee. *Id.* The Court noted that "the fundamental importance of ballots of reasonable size limited to serious candidates with some prospects of public support" is beyond debate, and that "[a] large filing fee may serve the legitimate function of keeping ballots manageable." 415 U.S. at 716, 717. The problem with California's system, however, was that a filing fee, "standing alone, it is not a certain test of whether the candidacy is serious or spurious." *Id.* at 717. Thus, the Court concluded that "the process of qualifying candidates for a place on the ballot may not constitutionally be measured *solely* in dollars." *Id.* at 716 (emphasis original). Nevertheless, it acknowledged the obvious: that "[t]his does not mean every voter can be assured that a candidate to his liking will be on the ballot." *Id.*

Texas law does not measure whether a candidacy is serious or spurious "*solely* in dollars." *Cf. id.* It is unsurprising, then, that its nominating petition procedure has been upheld facially[3] and as applied to both independents[4] and minor parties.[5] Plaintiffs fail to allege facts that distinguish them from plaintiffs whose challenges to this process have failed. Thus, Plaintiffs' challenge to Texas's nominating petition is foreclosed by binding precedent.

---

[3] *Am. Party of Tex. v. White*, 415 U.S. 767 (1974) (upholding requirement that minor parties and independent candidates demonstrate sufficient electoral support to obtain ballot access and requirement that petition signatures be gathered after primary election).

[4] *Nader v. Connor*, 332 F. Supp. 2d 982 (W.D. Tex. 2004), *aff'd*, 388 F.3d 137 (5th Cir. 2004) (rejecting argument that TEX. ELEC. CODE §§ 192.032(a), 192.032(b)(3)(A), 192.032(c), and 192.032(d)—which required independent presidential candidates to obtain more nominating signatures than minor political parties, imposed petition signature requirements, and set deadline to file—violated First and Fourteenth Amendment rights of independent presidential candidate and his supporters).

[5] *Tex. Indep. Party v. Kirk,* 84 F.3d 178, 184-86 (5th Cir. 1996) (noting that general election ballot nomination is by primary election for parties polling at 20% or more of the vote in the most recent gubernatorial election, a choice between primaries and nominating conventions for parties polling at least 2% but less than 20% in most recent gubernatorial election, and nominating conventions for other parties; concluding that "[t]his statutory scheme is constitutional." (upholding TEX. ELEC. CODE §§ 172.001, .002(a); 181.003, .005; 142.002, .007) (citing *White*, 415 U.S. at 780-81).

**B. Plaintiffs' allegations provide no basis for this Court to depart from the Supreme Court precedent upholding Texas's precinct convention requirements**.

As explained in Defendants' motion to dismiss, the Supreme Court, in *American Party of Texas v. White*, 415 U.S. 767, upheld Texas's precinct convention process, and the Fifth Circuit reaffirmed that holding in *Texas Independent Party v. Kirk*, 84 F.3d 178. *See* Dkt. 16 at 18—20. Still, Plaintiffs urge that this Court should revisit those precedents because today, the one-percent threshold under Texas Election Code § 181.005(a) requires parties nominating by convention to gather more signatures than it used to, and because "these signatures still must be collected by hand despite the fact that, in an Internet age, less burdensome alternatives are available." Dkt. 17 at 14-15.

This argument is unpersuasive. Plaintiffs offer no authority for the proposition that the percentage of support required to obtain ballot access might be constitutional when the population is smaller but later become unconstitutional because the population grows. And in fact, the opposite is true, given the "'important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot.'" *Storer v. Brown*, 415 U.S. 724, 732 (1974) (quoting *Jenness v. Fortson*, 403 U.S. 431, 442 (1971)). *See also Kirk,* 84 F.3d at 186 (recognizing that "the State has a legitimate goal of requiring a demonstration of sufficient public support to gain access to the ballot"). Indeed, the Ninth Circuit recently rejected the argument that a one percent signature requirement is unduly burdensome in a large state:

> Although the number of signatures the [California] Ballot Access Laws require may appear high, it accounts for only one percent of California's voter pool, the largest in the country. This low percentage threshold prevents candidates without established support from appearing on the ballot—satisfying California's interests—without seriously restricting the availability of political opportunity.

*De La Fuente v. Padilla*, 930 F.3d 1101, 1106 (9th Cir. 2019) (citation omitted).

The Ninth Circuit went on to note that laws requiring candidates to submit petitions demonstrating support from one percent of voters are "also consistent with other ballot access schemes deemed constitutional." *Id.* at 1106—07 (citing *Storer*, 415 U.S. at 740 ("Standing alone,

6

gathering 325,000 signatures in 24 days would not appear to be an impossible burden [and] … would not appear to require an impractical undertaking for one who desires to be a candidate for President."); *Jenness*, 403 U.S. at 442 (upholding law requiring independent candidates to gather signatures equivalent to five percent of the number of registered voters in the previous presidential election); *Nader v. Cronin*, 620 F.3d 1214, 1217 (9th Cir. 2010) (concluding that the burden of collecting signatures equivalent to one percent of the state's voters in the previous presidential election was low)).

Plaintiffs' contention that "less burdensome alternatives are available," Dkt. 17 at 15, is of no moment, because requiring a showing of support via convention participation or nominating petition is a reasonable, nondiscriminatory requirement and therefore not subject to strict scrutiny. *See, e.g.*, *De La Fuente*, 930 F.3d at 1106—07 and citations therein; *Nader v. Connor*, 388 F.3d 137 (affirming district court's rejection of the application of strict scrutiny to independent candidate nominating signature requirement and filing deadline); *Kirk*, 84 F.3d at 186 ("[b]ecause the burdens are not severe, the State need not present narrowly-tailored regulations to advance a compelling state interest.").

Plaintiffs also argue that their challenge to Texas's revised filing fee and nominating petition requirements should proceed to discovery because "Defendants' mere assertion that a claim (or 'argument') lacks legal support is insufficient to support dismissal under Rule 12(b)(6)." Dkt. 17 at 15. But this is *precisely* what Rule 12(b)(6) contemplates. *See, e.g., ." Flynn v. State Farm Fire & Cas. Ins. Co. (Texas)*, 605 F. Supp. 2d at 820 ("courts are required to dismiss, pursuant to [Rule 12(b)(6)], claims based on invalid legal theories"). And Plaintiffs offer no legal theory to support their challenge to the revisions to the Election Code that take effect September 1, 2019. Indeed, the revised law merely requires all candidates to submit the same filing fee or petition in lieu of filing fee. *See* TEX. ELEC. CODE §§ 172.024 (filing fees for primary candidate), 172.025 (number of signatures required on petition in lieu of filing fee for primary candidate); 141.041(b), (e) (imposing same fee-or-signature

requirement on candidate seeking nomination by convention). There is no legal basis to conclude that requiring all candidates to submit to this same (basic) provision violates the Constitution.

Plaintiffs also argue that Texas laws "give Primary Parties a first, exclusive right to solicit voters' support, at a time when Independents and Non-Primary Parties are prohibited by law from formally affiliating with them." Dkt. 17 at 15. But as explained in the motion to dismiss, Texas's laws setting the timelines for primary elections, nominating conventions, and nominating petitions have all been upheld as applied to both minor parties[6] and independents.[7] Plaintiffs allege no facts which change this result in their circumstances.

### C. The Response's efforts to distinguish *Nader* are unpersuasive.

Defendants reiterate that no Plaintiff has standing to challenge the requirements for independent candidates for president. *See* Dkt. 16 at 8—10; *supra* Part I. But even if any Plaintiff had standing, *Nader v. Connor*, 332 F. Supp. 2d 982, considered and rejected the argument that Texas's requirements for independent presidential candidates are unconstitutional, and Plaintiffs' attempt to distinguish it fails. Plaintiffs argue that *Nader* did not consider the requirements to "obtain signatures on paper nomination petitions and the provision that prohibits voters from signing an independent presidential candidate's nomination petition before the date of the presidential primary election." Dkt. 17 at 16. This is wrong—on the face of the opinion, *Nader* considered the totality of "the ballot-access requirements for independent candidates," finding them constitutional as applied. *Nader*, 332 F. Supp. 2d at 989; *see also id.* at 988 (noting that court was resolving case based on "the practical effect of [Texas's] election laws, viewed in their totality"); 954 (noting that, under Texas Election Code § 192.032(g), a petition signature is invalid if signed on or before primary election date). And even if *Nader* had not settled the issue, Plaintiffs fail to allege facts which would distinguish their case from

---

[6] *Kirk*, 84 F.3d at 186. *See also* Dkt. 16 at 16-20.
[7] *Nader*, 332 F. Supp. 2d at 989; *Faas*, 225 F. Supp. 3d at 612; *Kirk*, 84 F.3d at 186; Dkt. 16 at 10-13.

others upholding the signature requirements and prohibition on signing an independent candidate's nomination petition before the presidential primary.[8]

### D. Plaintiffs do not raise any novel challenge to Texas's requirements for independent candidates for Statewide office.

Even if any Plaintiff alleged a concrete intention to run as an independent candidate for Statewide office, *Texas Independent Party v. Kirk* settled the constitutionality of Texas's requirements for such candidates, and Plaintiffs' attempts to distinguish that case are unpersuasive. Plaintiffs argue that *Kirk* only considered the deadlines to file declarations of intent and nominating petitions under Texas Election Code §§ 142.002 and 142.006, and attempt to distinguish their case as also challenging §§ 142.007 (number of signatures required), 142.009 (prohibition on circulating nomination petitions before primary election) and the requirement to obtain signatures on paper (as opposed to electronically, as Plaintiffs believe would be more convenient). Dkt. 17 at 19.

But *Kirk* considered the entire universe of requirements applicable to independent candidates—in fact, it invalidated one: the requirement that nominating petitions contain each signer's voter registration number. 84 F.3d at 187 ("The requirement that voter registration numbers be included on independent candidate petitions . . . is unduly burdensome and constitutionally impermissible.") And it explicitly contemplated § 142.009 (and upheld it). 84 F.3d at 186-87. In any event, provisions far more burdensome than §§ 142.007, 142.009, and the requirement of paper signatures have been upheld by other Courts as applied to independent candidates for statewide office. *E.g., White*, 415 U.S. at 788-791 (upholding predecessor to § 142.007 requiring independent candidate to submit nominating petition with signatures equaling between 3% and 5% of the vote for governor

---

[8] *See, e.g., Kirk*, 84 F.3d at 186 ("The Texas requirement that minor parties and independents demonstrate sufficient electoral support for ballot access was also approved by the Supreme Court in *White*. The electoral scheme approved in *White* included a petition-gathering period that began after the primary election. Furthermore, the amount of time allotted for obtaining the petition signatures also is constitutional.") (Citing *White*, 415 U.S. at 782-83, 784-85, 786-88.)

9

in candidate's locality in most recent gubernatorial election and requirement that such signatures be notarized as applied to independent candidates for statewide office).

### E. Taken together, Texas's laws do not violate Plaintiffs' constitutional rights.

Perhaps aware of the binding precedent upholding the challenged provisions as applied to similarly situated litigants, Plaintiffs seek to avoid dismissal by arguing that "a number of facially valid provisions . . . may operate in tandem to produce impermissible barriers to constitutional rights." Dkt. 17 at 12 (quoting *Pilcher v. Rains*, 853 F.2d 334, 336 (5th Cir. 1988) (quoting *Storer*, 415 U.S. at 737)). This is true—as far as it goes—but it does not help the Plaintiffs because they fail to allege facts which detail "impermissible barriers to [their] constitutional rights." *Id.* Instead, they offer the very "labels and conclusions" that are insufficient to move past the 12(b)(6) stage. *See Twombly*, 5520 U.S. at 555.

Plaintiffs did plead that "the statutory provisions they challenge are 'unconstitutional as applied in combination with one another.'" Dkt. 17 at 12. In particular, they allege that "the skyrocketing cost of conducting a successful statewide nomination petition drive [] will easily exceed $600,000 in 2020," resulting in a "de facto financial barrier to participation [that] is all but insurmountable for non-wealthy candidates and parties," and treats Plaintiffs differently than the two major parties. Dkt. 14 ¶1. If true, this does not state a constitutional injury for the simple reason that the constitution's protections "do[] not mean every voter can be assured that a candidate to his liking will be on the ballot." *Lubin*, 415 U.S. at 717. Nor is any candidate or party entitled to appear on the ballot without satisfying reasonable requirements—in fact, "*Jenness* and *American Party* rejected challenges to ballot access restrictions that were based on a candidate's showing of voter support, notwithstanding the fact that the systems operated to foreclose a candidate's access to any statewide ballot." *Munro v. Socialist Workers Party*, 479 U.S. 189, 199 (1986) (citing *Jenness*, 403 U.S. 431; *White*, 415 U.S. 767). There is nothing unconstitutional about laws that impose similar burdens on those similarly situated. *See, e.g., Nader*, 332 F. Supp. 2d at 987 (quoting *Storer*, 415 U.S. at 746).

For these reasons and those in Defendants' motion to dismiss, this case should be dismissed.

    Respectfully submitted,

    KEN PAXTON
    Attorney General of Texas

    JEFFREY C. MATEER
    First Assistant Attorney General

    DARREN L. MCCARTY
    Deputy Attorney General for Civil Litigation

    THOMAS A. ALBRIGHT
    Chief for General Litigation Division

    */s/ Anne Marie Mackin*
    ANNE MARIE MACKIN
    Texas Bar No. 24078898
    Assistant Attorney General
    P.O. Box 12548, Capitol Station
    Austin, Texas 78711-2548
    (512) 463-2798 | FAX: (512) 320-0667
    anna.mackin@oag.texas.gov

    **ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that that on August 29, 2019, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

    */s/ Anne Marie Mackin*
    ANNE MARIE MACKIN
    Assistant Attorney General