IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MARK MILLER, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 1:19-CV-700-RP |
| | § | |
| JOHN OR JANE DOE, *in her or his official* | § | |
| *capacity as the Secretary of State of the State of* | § | |
| *Texas*, and JOSE A. ESPARZA, *in his official* | § | |
| *capacity as the Deputy Secretary of the* | § | |
| *State of Texas*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are Defendants JANE or JOHN DOE, in her or his official capacity as the

Secretary of State of the State of Texas, and Jose A. Esparza, in his official capacity as the Deputy

Secretary of the State of Texas's (the "Defendants" or the "State") Motion to Dismiss, (Dkt. 16),

and Plaintiffs Mark Miller, Michele Gangnes, Scott Copeland, Laura Palmer, Tom Kleven, Andy

Prior ("the Individual Plaintiffs"), America's Party of Texas, Constitution Party of Texas, Green

Party of Texas, and Libertarian Party of Texas's (the "Minor Parties") (collectively, the "Plaintiffs")

Motion for Preliminary Injunction, (Dkt. 23). The Court held a hearing on these motions on

October 31, 2019. (Dkt. 28). Having considered the parties' briefs, their arguments at the hearing,

the record, and the relevant law, the Court finds that the Motion to Dismiss should be denied and

the Motion for Preliminary Injunction should be denied.

## I. BACKGROUND

This case is about ballot access in Texas. Plaintiffs filed their complaint against Defendants

on July 11, 2019. (Compl., Dkt. 1). Plaintiffs seek declaratory and injunctive relief alleging, in general

terms, that the Texas Election Code imposes unconstitutional burdens on minor political parties and

independents while guaranteeing ballot access to "the two oldest and largest political parties." (*Id.* at 1). Plaintiffs filed their lawsuit on July 11, 2019, shortly after the end of the 86th legislative session and shortly before new changes to the Texas Election Code were scheduled to go into effect. (*See id.*).

Plaintiffs are individuals and political parties. The Individual Plaintiffs are voters and potential candidates, including: Mark Miller ("Miller"), who is a registered voter and "wants to run for office in future elections in Texas as an independent or nominee of a party that is required to nominate candidates by convention"; Michele Gangnes, who is a registered voter and seeks to vote for Minor Party candidates; Scott Copeland, who is a registered voter and chair of the Constitution Party of Texas ("CPTX"); Laura Palmer, who is a registered voter and former co-chair of the Green Party of Texas ("GPTX"); Tom Kleven, who is a registered voter and seeks to vote for Minor Parties; and Andy Prior, who is a registered voter, served as chair of America's Party of Texas ("APTX"), and "attempted to run for Land Commissioner in 2018 as a nominee of APTX, but APTX lacked the resources necessary to conduct a successful petition drive, and it did not qualify for ballot access." (*Id.* at 2–4). CPTX, GPTX, and APTX are also plaintiffs in the suit, as well as the Libertarian Party of Texas ("LPTX"). (*Id.* at 4–5).

Plaintiffs sued Jane or John Doe,[1] in her or his official capacity as the Secretary of State of the State of Texas, and Jose A. Esparza, in his official capacity as the Deputy Secretary of the State of Texas. In response to Plaintiffs' complaint, Defendants filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on August 8, 2019. (Dkt. 16). Plaintiffs filed a Motion

---

[1] When Plaintiffs filed their complaint in July 2019, there was no Secretary of State for the State of Texas. Secretary David Whitley was Acting Secretary of State until May 2019 when he resigned. Alexa Ura*, Texas Secretary of State David Whitley Departs as Legislative Session Ends*, The Texas Tribune (May 27, 2019), https://www.texastribune.org/2019/05/27/texas-secretary-state-david-whitley-forced-leave-office/. Ruth Hughs was sworn in as Secretary of State on August 19, 2019. Texas Secretary of State, *Biography of Secretary of State Ruth Ruggero Hughs*, https://www.sos.state.tx.us/about/sosbio.shtml (last visited Nov. 25, 2019).

for Preliminary Injunction on October 10, 2019. (Dkt. 23). The Court held a hearing on both

motions on October 31, 2019. (Dkt. 28).

### A. Major Parties

Under the Texas Election Code, there are three ways for a candidate to obtain a place on the

statewide general election ballot: (1) win a primary election, (2) receive a nomination from a political

party that nominates by convention and qualifies for ballot access, or (3) submit a nominating

petition signed by the required number of voters. (Mot. Dismiss, Dkt. 16, at 1–2). The path to ballot

access varies depending on whether the candidate represents a political party and how many votes

that party received in the last gubernatorial election or whether the candidate wants to run as an

independent candidate.

Political parties that received at least twenty percent of the vote in the last gubernatorial

election ("Major Parties") nominate their candidates for state and county government and Congress

by primary election. See Tex. Elec. Code § 172.001. Since 1900, only the Democratic Party and

Republican Party have qualified as Major Parties under Section 172.001. (Compl., Dkt. 1, at 8).

Candidates seeking to run in a primary election must submit an application to the state or county

chair, depending on the office, in December of the year before the election and pay a filing fee or

submit a nomination petition. Tex. Elec. Code §§ 172.116, .117(a), .120(a), .120(h), .122. Filing fees

range from $75 to $5000. Tex. Elec. Code § 172.024. If the candidate instead chooses to submit a

nomination petition, the candidate must collect from 500 to 5,000 signatures. Tex. Elec. Code §

172.025.

### B. Minor Parties

Political parties that are new or did not receive at least 2 percent of the total vote cast for

governor in the preceding election must nominate their candidate by convention. *See* Tex. Elec.

Code §§ 172.002, 181.002, 181.003. Minor Parties that intend to nominate by convention must

register with the Secretary of State by January 2 of the election year. Tex. Elec. Code § 181.0041. Candidates who intend to seek a Minor Party's nomination must file a notarized application in December of the year before the election. Tex. Elec. Code §§ 141.031, 172.023(a), 181.031–33. The nominating conventions are held after the primary election. Tex. Elec. Code §§ 41.007(a), 181.061(a),(b),(c). To place a nominee on the general election ballot, a Minor Party must file precinct convention participant lists—within 75 days of the precinct convention date—with the Secretary of State that contain participants equal in number to at least 1 percent of the total vote for governor in the preceding general election. *See* Tex. Elec. Code § 181.005(a). A participant is eligible if she is a registered voter or resident of the precinct who is eligible to vote who has not voted in a primary election or attended the convention of another party in the same election year. *See* Tex. Elec. Code §§ 162.001, 162.003, 162.012, 162.014, 181.065, 112.002–04. According to Plaintiffs, in 2020, the 1 percent requirement imposed by Section 181.005(a) will translate to 83,717 participants. (Compl., Dkt. 1, at 10).

If a Minor Party's participant list lacks the required number of participants, then the Minor Party must file nomination petitions—within the same 75-day period—that contain a sufficient number of valid signatures to make up for the shortfall. *See* Tex. Elec. Code §§ 181.006(a),(b). A voter may not sign the petition  if she voted in the primary election, which Plaintiffs characterize as placing Minor Parties at a disadvantage by giving Major Parties a "first, exclusive right to solicit voters' support, at a time when [Minor Parties] are prohibited by law from formally affiliating with them via convention or by obtaining their signatures on a nomination petition." (Compl., Dkt. 1, at 11). Voters also may not sign a Minor Party's nomination petition if they participated in another party's convention or signed another party's petition. *See* Tex. Elec. Code §§ 181.006(g)-(h).

Once a petition is submitted, the Secretary of the State has about two months to certify it up until 68 days before the general election. *See* Tex. Elec. Code §§ 142.010(b), 181.007(b), 192.033(b).

In 2019, Texas amended Section 181.005 by adding a provision that permits a Minor Party to qualify for the ballot if any of its candidates for statewide office received at least 2 percent (versus the previous 5 percent threshold) of the vote in at least one of the five previous general elections. *See* Tex. Elec. Code § 181.005(c).

The subject of the Plaintiffs' Motion for Preliminary Injunction is another new provision. In 2019, Texas amended the statutory scheme to impose a new requirement on Minor Parties, one symmetrical with imposed on Major Parties: if a Minor Party qualifies for the ballot, their candidates must meet the requirements imposed on Major Party candidates. The new provision states:

> § 141.041 Filing Fee or Petition to Appear on Ballot for General Election for State and County Officers
>
> (a) In addition to any other requirements, to be eligible to be placed on the ballot for the general election for state and county officers, a candidate who is nominated by convention under Chapter 181 or 182 must:
>> (1) pay a filing fee to the secretary of state for a statewide or district office or the county judge for a county or precinct office; or
>> (2) submit to the secretary of state for a statewide or district office or the county judge for a county or precinct office a petition in lieu of a filing fee that satisfies the requirements prescribed by Subsection (e) and Section 141.062.
>> (b) The amount of the filing fee is the amount prescribed by Section 172.024 for a candidate for nomination for the same office in a general primary election.
>> (c) A filing fee received by the secretary of state shall be deposited in the state treasury to the credit of the general revenue fund.
>> (d) A filing fee received by the county judge shall be deposited in the county treasury to the credit of the county general fund.
>> (e) The minimum number of signatures that must appear on the petition authorized by Subsection (a) is the number prescribed by Section 172.025 to appear on a petition of a candidate for nomination for the same office in a general primary election.
>> (f) The secretary of state shall adopt rules as necessary to implement this section.

Per Section 141.041(f), in August 2019, the Secretary of State adopted rules to implement the provision. Texas Secretary of State, *Nominee of Libertarian or Green Party in 2020*, https://www.sos.state.tx.us/elections/candidates/guide/2020/lib-green-nom2020.shtml) (last

visited Nov. 25, 2019). Plaintiffs complain that Section 141.041 does not specify: (1) when signatures

may be collected, (2) which voters are eligible to sign, or (3) when the filing fees must be paid or the

nomination petitions submitted. (Compl., Dkt. 1, at 13).

### C. Independents

Candidates who are not affiliated with a political party ("Independents") may not nominate

by convention and must submit nomination petitions signed by eligible voters. The requirements are

largely the same as those placed on Minor Parties, and they must obtain the same number of valid

signatures: this coming election year, 83,717. Independents seeking state office must submit their

nomination petitions by the 30th day after the runoff primary election day, but they may not

circulate them until after the primary election or runoff primary election. Tex. Elec. Code §§

142.004–06, 142.009, 202.007. According to Plaintiffs, Independents seeking state office have either

30 days or 114 days to collect signatures. (Compl., Dkt. 1, at 14).

Independent candidates for president also must file an application and nomination petition,

and their signature requirement is equal to at least 1 percent of the total vote for president in Texas

in the preceding presidential election. See Tex. Elec. Code §§ 192.032(a), (b), (d). Plaintiffs allege

that translates to 89,692 valid signatures for 2020. (Compl., Dkt. 1, at 15).

Independent candidates for president must file their application no later than the second

Monday in May of the presidential year, which Plaintiffs claim is the second-earliest filing deadline in

the country. Independent candidates running for president cannot circulate their petition until after

the presidential primary in March, leaving an Independent only 69 days to collect signatures

according to Plaintiffs' allegations. (Compl., Dkt. 1, at 15).

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B. Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

The Court will first consider Defendants' Motion to Dismiss and then Plaintiffs' Motion for Preliminary Injunction.

#### A. Motion to Dismiss

##### 1. Standing

Defendants argue that Plaintiffs do not have standing to challenge the requirements that apply to Independent candidates because they allege a desire to seek the nomination of a Minor

Party, not to run as an Independent. (Mot. Dismiss, Dkt. 16, at 8–10). Defendants concede though

that Plaintiff Mark Miller "alludes to participating in the political process as an independent

candidate." (*Id.* at 8). Defendants also admit that some of the individual Plaintiffs express a desire to

vote for an Independent candidate. They attack Miller's standing though as not sufficiently concrete

because, relying on *Kennedy v. Pablos*, Miller "has not committed to any particular course of conduct

with respect to his candidacy." No. 1:16-CV-1047-RP, 2017 WL 2223056, at *7 (W.D. Tex. May 18,

2017). They also argue that Miller's allegation that the statutory scheme chills and suppresses his

exercise of his First Amendment rights is "not an adequate substitute for a claim of specific present

objective harm or a threat of specific future harm." (Mot. Dismiss, Dkt. 16, at 9) (quoting *Clapper v.*

*Amensty Int'l USA*, 568 U.S. 398, 418 (2013)). In addition to arguing that "subjective chill" is the only

injury asserted by Miller, Defendants also state that his chill allegation is unreasonable because he

obtained a place on the ballot in the past "demonstrating that he as a LPTX candidate has not been

harmed." (*Id.* at 9–10).

       Plaintiffs counter that the individual Plaintiffs have standing to challenge the Independent

candidate requirements. They argue they have standing as voters, which, according to Plaintiffs, has

been upheld by the Supreme Court and the Fifth Circuit. Plaintiffs identify their concrete injuries as

the severe burdens and costs imposed that "make it all but impossible for non-wealthy Independents

and [Minor] Parties to participate in Texas's elections and for the Voter Plaintiffs to vote for them."

(Resp. Mot. Dismiss, Dkt. 17, at 5). The individual Plaintiffs claim they are harmed by the lack of

such candidates on the general election ballot. (*Id.*). Miller refutes Defendants' standing challenge by

arguing that Defendants' reliance on *Kennedy* is misplaced in that the Court's decision in that case is

not applicable to every candidate in every context. (*Id.* at 7). Further, Miller asserts he alleged that

the statutory scheme chills him from the free exercise of his First Amendment rights and that his

past ability to run for office as the LPTX nominee has no bearing on his alleged intention or ability to run as an Independent.

In *Kennedy*, Plaintiff Roque De La Fuente was a candidate for the 2016 presidential election in many states but did not secure a place on the ballot in Texas. Plaintiff sought to amend his complaint to add allegations that wished to run for president in 2020:

> Plaintiff De La Fuente will be a candidate for President in 2020, and desires to begin campaigning for President as soon as possible after the 2016 general election. Because he wants to preserve his ballot access options for 2020, and because the requirements to appear on the ballot as an independent candidate in Texas are extraordinarily difficult . . . he must begin petitioning as an independent candidate as soon as possible after November 8, 2016 to be successful. Furthermore, he might again seek the nomination of the Democratic Party.

2017 WL 2223056, at *7 (quoting De La Fuente's proposed amended complaint). The proposed allegations in *Kennedy* are distinguishable: De La Fuente alleged he wanted to "preserve his ballot access options" and "might again seek the nomination of the Democratic Party," *id.* at *6, whereas Miller is registered to vote, intends to vote, and "wants to run for office in future elections in Texas as an independent or nominee of a party that is required to nominate candidates by convention," (Compl., Dkt. 1, at 2). In this case, Miller has established standing to challenge ballot access under the new statutory scheme with his specific allegation that he intends to run in the next general election as an Independent candidate or as a candidate for a Minor Party.

Defendants also cite to *Clapper* to support their contention that Miller's allegations of a chill are inadequate. In *Clapper*, the Supreme Court evaluated allegations stemming from a government agency's surveillance program. In determining that the respondents injuries were not fairly traceable to the government's purported activities, the Supreme Court explained that subjective chill—for example, the knowledge that an agency was engaged in certain activities or the fear that the government may use the fruits of those activities for some future action that is detrimental—is not a substitute for alleging a specific harm or threat of a specific future harm. *Clapper*, 568 U.S. at 417–18

(discussing the facts of *Laird v. Tatum*, 408 U.S. 1, 92 S. Ct. 2318, 33 L. Ed. 2d 154). *Clapper* is not determinative here. Miller alleges a specific future harm: that Texas's statutory scheme chills him from the free exercise of his First Amendment rights if he runs as an Independent candidate or nominee of a Minor Party.

Finally, Defendants posit that the individual Plaintiffs fail to identify an Independent candidate for whom they wish to vote. Ballot secrecy is a core principle in our country, and Defendants provide no support for their contention that this Court should require Individual Plaintiffs to identify the specific candidates they plan to vote for about a year before that election will take place. Accordingly, Defendants have not persuaded the Court that the Individual Plaintiffs, as voters, lack standing to challenge the Texas Election Code.

## 2. Failure to State a Claim

Courts evaluating the constitutionality of election laws employ the test announced by the Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), as refined in *Burdick v. Takushi*, 504 U.S. 428 (1992). In *Anderson*, the Supreme Court instructed lower courts to evaluate elections laws by considering the "character and magnitude of the asserted injury" posed by the statutes to the plaintiff's asserted rights, and then weighing that against the interest put forward by the state. 460 U.S. at 788. In *Burdick*, the Court clarified that, when state regulation imposes severe restrictions on the rights of voters, the regulation must be narrowly drawn to advance a compelling government interest. 504 U.S. at 434. However, where the restrictions are reasonable and nondiscriminatory, the State's important regulatory interests usually suffice to justify the restrictions. *Id.*

Defendants urge this Court to dismiss Plaintiffs' challenge to the ballot access requirements for Independent presidential candidates and Minor Parties. Defendants argue that for Independent candidates the Fifth Circuit already has affirmed a district court's finding that Texas's petition signature requirements and filing deadline for Independents are "legal and constitutional" as applied

11

to Ralph Nader and voters supporting him. *Nader v. Connor*, 388 F.3d 137 (5th Cir. 2004) (affirming *Nader v. Connor*, 332 F. Supp. 2d 982 (W.D. Tex. 2004)) (*see* Mot. Dismiss, Dkt. 16, at 11–12). In *Nader*, the district court concluded that "Texas's election laws are reasonable in drawing a distinction between the requirements imposed upon independent candidates and minor political-party candidates." 332. F. Supp. 2d at 991. Concluding the requirements were reasonable, the district court then evaluated whether the State's justifications—preserving the integrity of the electoral process and regulating the number of independent candidates on the ballot—were sufficient and found they were under the standard announced in *Anderson* and *Burdick*. *Id.* at 992.

Plaintiffs counter that *Nader* is not instructive because they challenge new provisions imposed on Independents, provisions that were not challenged in *Nader*, like gathering signatures on paper nomination petitions and prohibiting voters from signing an independent presidential candidate's nomination petition before the date of the presidential primary election. Plaintiffs also attempt to distinguish *Nader* because it was heard on an expedited basis. Finally, Plaintiffs point out that the court in *Nader* conducted a bench trial and then issued a ruling and did not dismiss the challenges on a 12(b)(6).

*Nader* does not foreclose Plaintiffs' claims at this stage of litigation. While Plaintiffs' challenge to ballot access requirements for Independent presidential candidates may not survive the *Anderson-Burdick* framework, Plaintiffs have mounted an attack on both a new provision to the Election Code—that did not exist when *Nader* was decided—and the statutory scheme as a whole— which also is now different—that dictates ballot access in Texas.

Second, Defendants similarly argue that the requirements for Independent candidates for statewide office are constitutional under controlling caselaw: *Texas Independent Party v. Kirk*, 84 F.3d 178 (5th Cir. 1996). There, the plaintiffs challenged the requirements imposed on independent candidates for statewide office as unconstitutional. *Id.* at 179–80. Like *Nader*, the plaintiffs in *Kirk*

12

were not challenging the same set of statutory provisions as here, and the district court made its determinations on summary judgment, not a motion to dismiss. The Fifth Circuit upheld specific provisions of the Texas Election Code, as they existed in the 1990s, as constitutional but declared the voter registration number requirement for the petitions of independent candidates impermissible). *Id.* at 187.

Third, Plaintiffs challenge Texas Election Code Section 141.063, which requires petition signers to be registered voters and provide signature, name, and address; Section 141.064, which requires petition circulators to witness each signature and point out each statement pertaining to the signer; and Section 141.065, which requires an affidavit for circulators. Defendants argue that the requirements for gathering petition signatures imposed on Independents enforces the "one person, one vote" principle, and challenges to those requirements are foreclosed by existing precedent. Defendants support their argument with the absence of case law: "[t]here is no authority for the proposition that . . . the State cannot require verification that signatures are genuine and signers are eligible to sign. This is sufficiently obvious that it bears little mention in the caselaw." (Mot. Dismiss, at 15). Without more, Defendants have not shown that Plaintiffs have failed to state a claim, and the Court will not dismiss Plaintiffs' petition requirement claims at this stage.

### B. Preliminary Injunction

Plaintiffs request that this Court enjoin Defendants from enforcing the newly enacted Section 141.041 of the Texas Election Code against Plaintiffs in the 2020 election cycle. (Mot. Prelim. Injunc., Dkt. 23, at 2). Section 141.041 took effect on September 1, 2019 and imposes new requirements on candidates seeking the nomination of a Minor Party which must be met by December 9, 2019.

1. <u>Standard of Review</u>

A preliminary injunction is an extraordinary remedy, and the decision to grant such relief is to be treated as the exception rather than the rule. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

2. <u>Analysis</u>

a. Likelihood of Success on the Merits

In support of their injunction request, Plaintiffs raise three grounds to prevail on the merits: (1) Defendants' construction of Section 141.041 is contrary to the plain language of the statute; (2) Defendants' enforcement of Section 141.041 in the 2020 election cycle violates Plaintiffs' right to due process of law; and (3) enforcement is unconstitutionally burdensome under the *Anderson-Burdick* methodology.[2] (Mot. Prelim. Injunc., Dkt. 23, at 2).

Plaintiffs' first argument is that the Secretary of State's construction of Section 141.041 is contrary to the language of the statute and, because of that construction, Defendants impose undue burdens on Plaintiffs. Section 141.041 states:

> [T]o be eligible to be placed on the ballot for the general election for state and county officers, a candidate who is nominated by convention . . . must:

---

[2] In response to Plaintiffs' Motion for Preliminary Injunction, Defendants reiterate their standing arguments from their Motion to Dismiss and argue that only LPTX and GPTX have standing to seek an injunction as to Section 141.041 "because they are the only parties to this litigation to whom it will apply." (Resp. to Mot. Prelim. Injunc., Dkt. 25, at 4). Plaintiffs reply that APTX and CPTX are also required to nominate by convention and therefore have standing to challenge Section 141.041 because their nominees would be required to comply with it. The Court adopts its standing analysis above in Part III.A.1 regarding the Individual Plaintiffs and Minor Parties. Plaintiffs have standing to move for a preliminary injunction.

(1) pay a filing fee to the secretary of state for a statewide or district office or the county judge for a county or precinct office; or

(2) submit to the secretary of state for a statewide or district office or the county judge for a county or precinct office a petition in lieu of a filing fee that satisfies the requirements prescribed by Subsection (e) and Section 141.062.

Tex. Elec. Code § 141.041(a).

The rule promulgated by the Secretary of State reads:

In order to become a Libertarian Party or Green Party nominee for a particular office, you must file an application for nomination with the county or state party chair (PDF), as appropriate (see chart). (Section 181.032, Texas Election Code). The application must be filed no later than 6:00p.m. on December 9, 2019. (Section 181.033, Texas Election Code). . . . NEW LAW: HB 2504 (2019) -- HB 2504 requires that the application for nomination must now be accompanied by either a filing fee or a petition in lieu of filing fee (PDF), delivered to the Secretary of State (for a statewide or district office) or to the county judge (for a county or precinct office), in order for the applicant to qualify for nomination. The amount of the filing fee or the number of signatures required for the petition in lieu of a filing fee is the same amount that is required for a candidate seeking nomination by primary election under Sections 172.024 and 172.025.

Texas Secretary of State, *Nominee of Libertarian or Green Party in 2020*,

https://www.sos.state.tx.us/elections/candidates/guide/2020/lib-green-nom2020.shtml (last visited

Nov. 25, 2019). The rule issued by Defendants applies Section 141.041 to Minor Party candidates

who are filing an application and are not yet nominees for their parties. *See id.*

The parties dispute whether there is an inconsistency between the statute and the rule.

Plaintiffs' argument is that the statute applies to nominees and the rule applies to candidates who are

not yet nominees because, as of December, no parties have held their nominating conventions yet.

Defendants assert: (1) there is no inconsistency between the statute's text and the Secretary's rule

because the statute says nothing about when a candidate must satisfy the statutory eligibility

requirements, and (2) even if there is an inconsistency, it would not establish a likelihood of success

on the merits of any claim because Plaintiffs do not cite authority for the proposition that they are

entitled to an injunction absent a showing of constitutional harm. (Resp. Mot. Prelim. Injunc., Dkt.

25, at 5). At the hearing, Defendants additionally argued that if the provision is ambiguous on its face, then it should be read in conjunction with the other code provisions.

The Court concludes that the Defendants' construction of Section 141.041 is not contrary to the statute itself. The statute expressly delegates authority to Defendants to "adopt rules as necessary to implement this section." Tex. Elec. Code § 141.041(f). Because the statute is silent on the timing of the filing deadline, Defendants set a deadline to implement the statute. While the deadline applies to candidates who are not yet nominees, that distinction does not appear to conflict with the statute or its intent. Under Defendants' construction, a nominee is still subject to the same requirements whether those must be fulfilled before or after becoming a nominee. Moreover, the same deadline applies to Major Party candidates. Tex. Elec. Code § 172.023(a) ("An application for a place on the general primary election ballot must be filed not later than 6 p.m. on the second Monday in December of an odd-numbered year."); Texas Secretary of State, *Filing in the Democratic or Republican 2020 Primary*, https://www.sos.state.tx.us/elections/candidates/guide/2020/demorrep2020.shtml (last visited Nov. 25, 2019) ("In order to become the Republican or Democratic Party nominee for a particular office, you must file an application [by] December 9, 2019."). Therefore, the rule promulgated by Defendants does not contradict the statute, and the construction conforms the implementation of new Section 141.041 with already-existing statutes and rules that set the same deadline.

Second, Plaintiffs contend that Defendants' enactment and enforcement of Section 140.041 late in an election cycle violates Plaintiffs' due process rights. The new statute went into effect in September and Defendants had issued their construction of the new statute about a few weeks before the effective date, giving the Minor Parties about three months to comply. Plaintiffs illustrate the alleged due process violation with the effect it has had on LPTX. As a ballot-qualified Minor Party, LPTX was, until weeks before the motion for preliminary injunction was filed, entitled to

16

place its nominees on the general election ballot after selecting them at their spring nominating conventions. (Mot. Prelim. Injunc., Dkt. 23, at 6). Now, Plaintiffs allege, LPTX must recalibrate and comply with the new filing fee or nomination petition requirements by December 9, 2019. Plaintiffs therefore argue LPTX was retroactively stripped of ballot access on September 1, 2019 when the new law took effect. Defendants respond that "there is no constitutional right to run for state office protected by the Fourteenth Amendment." *Wilson v. Birnberg*, 667 F.3d 591, 598 (5th Cir. 2012) (quoting *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 629 F.2d 993, 998 n.9 (5th Cir. 1980)).

In support of their Motion for Preliminary Injunction, Plaintiffs submitted eight declarations of individuals who intend to run as a Minor Party candidate in the 2020 general election and the declaration of John Wilford, the Chair of the LPTX. (Decls., Dkt. 23, at 13–49). The declarants are affiliated with LPTX or GPTX, both of which are eligible to place their candidates on the 2020 general election ballot. (*See id.*). Relying on the declarations, Plaintiffs argue that although LPTX and GPTX are eligible to place their nominees on the ballot, Section 141.041 places a potentially insurmountable obstacle in front of their candidates who now must comply, without sufficient notice, with the new requirements of paying a filing fee or submitting a petition to appear on the ballot.

Plaintiffs liken their position to that of the plaintiffs in *Hudler v. Austin*, 419 F. Supp. 1002 (E.D. Mich. 1976), *aff'd sub nom. Allen v. Austin*, 430 U.S. 924 (1977). In *Hudler*, supporters of "new" political parties challenged the constitutionality of Michigan election statutes that placed new requirements on those new parties to qualify for the general election ballot. *Id.* at 1004. The district court found that the new statutes were constitutional but also considered whether enforcing the constitutional statutes on the plaintiffs in the time allotted would deprive the plaintiffs of due process. *Id.* at 1013–14. Noting the "short time limits, extra expense and duplicative effort required to regenerate the support of plaintiffs' constituencies," the court found that the law imposed "an

17

unnecessarily prejudicial burden on the plaintiff new parties seeking 1976 ballot status." *Id.* at 1014. Accordingly, the court concluded that the law was unconstitutional only as it applied to the 1976 general election. *Id.*

*Hudler* is instructive but distinguishable. Michigan already required new parties to "submit petitions bearing the signatures of registered electors equivalent to not less than 1% nor more than 4% of the vote received by the successful candidate for Secretary of State at the last election." *Id.* at 1004. The state then added a ballot performance requirement: new parties were required to "receive a vote total of three-tenths of 1% of the total number of voters appearing at the primary as shown by the poll books." *Id.* Thus, when a voter reviewed her primary ballot, she would have the option of voting for any one party listed on the ballot or indicating a desire for a new party to be on the ballot in the general election. *Id.* at 1005. While the time period to comply in *Hudler* was similar to the instant case—about four months from the effective date of the new law to the primary election versus about three months in this case—the plaintiffs in *Hudler* had already completed or nearly completed their petition drives. *See id.* at 1014. The plaintiffs essentially were required to start over again: "the opportunity for soliciting petition signatures and proselytizing for primary support at the same time was rendered impossible since petition gathering had all but drawn to a close when plaintiffs were first apprised of the primary performance requirement." *Id.* Plaintiffs in the instant case, however, have not completed or largely completed their work to achieve ballot access. There is no risk that Plaintiffs would have to retrace their steps and return to court the same voters. *Cf. id.* (concluding the new law imposed a prejudicial burden on plaintiffs partly because it required them to regenerate the support of their constituencies).

Defendants take a broader tack, arguing that Plaintiffs' due process claim is foreclosed by *Wilson v. Birnberg*, 667 F.3d 591 (5th Cir. 2012). In *Wilson*, the plaintiff sought to be placed on the ballot, but his application, submitted on the filing deadline, was rejected because it did not contain

18

his residence address. *Id.* at 594. The Fifth Circuit affirmed a district court's dismissal of Wilson's due process claim, holding that "public office does not constitute property within the meaning of the Due Process Clause." *Id.* at 598. Regardless of the Fifth Circuit's stance on a person's right to appear on a ballot, Plaintiffs also allege Section 141.041 violates their voting, speech, and associational rights. Thus, *Wilson* does not entirely foreclose Plaintiffs' due process cause of action. That said, Plaintiffs have failed to meet their burden of showing a likelihood of success on their allegations of due process violations.

Finally, under the *Anderson-Burdick* framework, Plaintiffs contend that Defendants' enforcement of Section 141.041 violates Plaintiffs' First and Fourteenth Amendment rights. Plaintiffs argue that because the burdens imposed on them in the 2020 election cycle are severe, Defendants must "provide a compelling state interest and narrow tailoring of its rule." (Mot. Prelim. Injunc., Dkt. 23, at 7) (quoting *Kirk*, 84 F.3d at 184). Plaintiffs contend that complying by December 9, 2019 effectively will bar most, if not all, Minor Parties from appearing on the general election ballot. Moreover, Plaintiffs state that even if they are able to pay the filing fees, they would exhaust funds for campaigning "putting them in the untenable position of expending funds for mere applicants who will never become their nominee at the expense of the candidates who are nominated." (Mot. Prelim. Injunc., Dkt. 23, at 8) (citing appended declarations). For candidates who cannot pay the filing fees, they must collect signatures by hand on paper nomination petitions, which Plaintiffs claim would be "inherently time-consuming, labor-intensive, and likely even more expensive than paying the filing fee." (*Id.*). According to Plaintiffs, the burdens are heavier if applied in the 2020 election cycle because they only have three months to comply.

Defendants maintain that Section 141.041 is tailored to important state interests: "requiring some preliminary showing of a significant modicum of support" and "avoiding confusion, deception, and even frustration of the democratic process at the general election." (Resp. Mot.

Prelim. Injunc., Dkt. 25, at 9) (quoting *Jenness v. Fortson*, 403 U.S. 431, 439 (1971)). Defendants

explain that, under the new statutory scheme, it is easier for Minor Parties to gain access to the

general election ballot—because the minimum threshold was reduced from five percent to two

percent of the total number of votes received by all candidates for that office at least once in the five

previous general elections—and so it "makes good sense" that candidates of those ballot-qualifying

parties show a modicum of support. (*Id.*). Defendants also state that it is sensible for this

requirement be imposed with the same deadline as that imposed on the Major Parties so Defendants

"can efficiently complete the certification process after the nominating conventions." (*Id.*). Plaintiffs'

argument that "no state interest is served" by Section 141.041 goes too far, (*see* Reply in Support of

Mot. Prelim. Injunc., Dkt. 26, at 5), and it is unlikely they can show that Section 141.041 is not

tailored to the state interests proffered by Defendants. Thus, Plaintiffs have failed to show that

Section 141.041 would not withstand scrutiny under the *Anderson-Burdick* framework.

### b. Irreparable harm

In their briefing, Plaintiffs devote three sentences to their showing of irreparable harm. They

cite the Fifth Circuit for the proposition that the "loss of First Amendment freedoms for even

minimal periods of time constitutes irreparable injury justifying the grant of a preliminary

injunction." *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013). Plaintiffs

then make the conclusory assertion that, absent relief, Minor Parties will be "severely restricted, or

barred, from running candidates" in the general election and that the exclusion of their candidates

will cause irreparable harm to their voting, speech, and associational rights. With a paucity of

briefing on the matter, Plaintiffs failed to demonstrate that claimed irreparable harm. *See Aransas*

*Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014) (a showing of "real and immediate threat of future

or continuing injury" is required).

### c. Balance of equities

Plaintiffs argue that Defendants cannot articulate any harm they will suffer if enjoined from enforcing Section 141.041. (Mot. Prelim. Injunc., Dkt. 23, at 10). Defendants counter that they have "weighty and indisputable interests" in "administering elections and applying duly enacted laws." (Resp. Mot. Prelim. Injunc., Dkt. 25, at 10). It is not clear whether the State's interests outweigh the injuries alleged by Plaintiffs. On balance, this factor is likely neutral.

### d. Public interest

Plaintiffs contend that Defendants have regulated Minor Party ballot access for more than 50 years before enacting Section 141.041 and that the fees generated by Section 141.041 "will not be used to offset taxpayer-funded nominating procedures." (Mot. Prelim. Injunc., Dkt. 23, at 10). Thus, Plaintiffs argue, enjoining enforcement of the new law for one election cycle will not harm the public interest. (*Id.*) Defendants respond that Plaintiffs misunderstand the public interest factor and that the public "does not have an interest in allowing unfettered access to the ballot." (Resp. Mot. Prelim. Injunc., Dkt. 25, at 11). Overall, Plaintiffs have not demonstrated that a preliminary injunction would serve the public interest.

### IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Defendants' Motion to Dismiss, (Dkt. 16), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Preliminary Injunction, (Dkt. 23), is **DENIED**.

**SIGNED** on November 25, 2019.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE