## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| MARK MILLER, MICHELLE GANGES, SCOTT COPELAND, LAURA PALMER, TOM KLEVEN, ANDY PRIOR, AMERICA'S PARTY OF TEXAS, CONSTITUTION PARTY OF TEXAS, GREEN PARTY OF TEXAS, and LIBERTARIAN PARTY OF TEXAS,<br>　　　*Plaintiffs*,<br><br>v.<br><br>JOHN OR JANE DOE, in his or her official capacity as the Secretary of State of Texas, and JOSE A. "JOE" ESPARZA, in his official capacity as the Deputy Secretary of State of the State of Texas,<br>　　　*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | No. 1:19-cv-00700-RP |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE SUMMARY JUDGMENT EVIDENCE**

**TO THE HONORABLE JUDGE ROBERT PITMAN:**

Defendants John or Jane Doe in his or her official capacity as Secretary of State of Texas and Jose A. "Joe" Esparza in his official capacity as Deputy Secretary of State of Texas (collectively, "Defendants") file this Reply In Support of Motion to Strike Summary Judgment Evidence. Defendants would respectfully show:

## ARGUMENT

### A.　　Mr. Hall's Testimony is Inadmissible

Mr. Hall is a smart and professional civil litigator, but the Parties agree he is not an expert in the matters on which he testifies.[1] Yet Mr. Hall's opines as if he is an expert: he relies on, and extrapolates from, external sources of information in support of opinion testimony.

---

[1] Dkt. 84, p. 8 ("In any event, Mr. Hall does not purport to offer any 'expert' opinions, either factual or legal.")

*1.  Mr. Hall Is Not an Expert, But Offers Inadmissible Expert Opinion Testimony*

In an illustrative example, Mr. Hall opines, "Texas's Ballot Was Not Historically Overcrowded."[2] Mr. Hall provides no definition for "overcrowded," no method or manner for calculating or evaluating how one might determine whether Texas' ballots were historically overcrowded; nor does Mr. Hall offer any testimony demonstrating he has reliably applied such principle or method to opine regarding ballot overcrowding. Additionally, Mr. Hall does not, and cannot, testify as to whether the almanac data upon which he relies is of the sort reasonably relied upon by experts in the field to draw conclusions. Those are the requisites of an expert opinion under Rule 702, and Mr. Hall meets none of them.

There are other examples. Mr. Hall opines that "Texas's Petition Signature Requirements Can Be Met Only By Expending Substantial Financial and Other Resources."[3] He goes on to testify that, "Independents And Non-Primary Parties Want To Appear On The Ballot And Receive Voter Support When They Do."[4] Later on the same page, Mr. Hall expands on that opinion, saying "The general dearth of Independent candidates from Texas's general election ballot – and the total exclusion of statewide Independents for many successive election cycles – cannot be attributed to a lack of interest among such candidates."[5] Mr. Hall next opines, "The Challenged Provisions Are Excessive and Immensely Burdensome to Independents and Non-Primary Parties."[6] This is no mere opinion, it is an opinion that goes to one of the ultimate issues in this case. He continues, "The high signature requirements for both Independents and Non-Primary Parties in statewide and presidential elections are made even more burdensome due to Texas's short time period for signature collection."[7] This

---

[2] Dkt. 72, p. 2.
[3] *Id.*, p. 4.
[4] *Id.*, p. 8.
[5] *Id.*
[6] *Id.*, p. 9.
[7] *Id.*, p. 10.

bald opinion even lacks citation to a source; later in the paragraph, Mr. Hall simply refers the Court to the Texas Election Code. Reviewing such material and extrapolating about its effects on particular parties is the province of an expert. Mr. Hall's testimony does not simply summarize materials, as the Response argues. Mr. Hall offers extensive interpretation and extrapolation from Exhibits 37 and 38.[8] These exhibits are spreadsheets—raw data—yet Mr. Hall's testimony interprets this raw data into support for his opinion that Texas ballot access provisions are "[i]mmensely burdensome."[9] Mr. Hall's testimony is inadmissible, and the Court should strike it.

### 2. Mr. Hall's Exhibits Are Inadmissible

Even if Mr. Hall were an expert, his testimony does not allow for blanket admission of underlying facts and data into the record.[10] Yet Mr. Hall blithely attaches any document he appears to have reviewed as legal research for this case. In particular, Mr. Hall attached Exhibits 9-14, 16, 18-21, and 26.[11] These exhibits are news articles, many simply plucked from the internet, the putatively statements of which Mr. Hall uncritically relies upon as an accurate historical record. In one case, Mr. Hall relies on the statements of Maria Moschonisiou, the southwest regional coordinator of a 1988 campaign, whose statements are only found within an article attached as Exhibit 13.[12] In short, these articles are hearsay, and inadmissible.[13] The Moschonisiou reference is hearsay within hearsay.[14]

It is worth noting that Plaintiffs attempted to obtain testimony from the Ruth R. Hughs in her official capacity as Secretary of State of the State of Texas on the history of Texas' ballot access provisions by way of a Rule 30(b)(6) the Secretary of State (official capacity). However, Plaintiffs failed

---

[8] *Id.*, p. 14.
[9] *Cf. id.* at 10, 14.
[10] FED. R. EVID. 703 ("But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.").
[11] Dkt. 72-9—72-14, 72-16, 72-18—72-21, 72-26.
[12] Dkt. 72, p. 5; Dkt. 72-13.
[13] FED. R. EVID. 801(c), 802.
[14] FED. R. EVID. 805.

to properly notice the topic for the Rule 30(b)(6) witness, Keith Ingram. Defendants duly objected, and as a practical matter, Mr. Ingram was unprepared to provide such testimony due to the lack of notice, even assuming such history comprises a part of the institutional knowledge of his office.[15] Plaintiffs plainly understood they would require evidence on these issues, and having failed to obtain it from Defendants, are using their attorney of record as a shortcut.

The Response argues that some of the articles are admissible as ancient documents.[16] The Response does not use this term, but cites to a 1961 case that does.[17] Plaintiff does not explain which of the articles in question might fall under his exception.[18] At a minimum, Exhibits 20, 21 and 26 do not, because they are less than twenty years old.[19] The Response also suggests that Mr. Hall does not rely on Exhibit 20 to prove the truth of the matter asserted.[20] This, too, is unavailing. Mr. Hall not only relies on Exhibit 20 to prove the truth of Hall's assertion that the Friedman campaign claimed to spend $20,000—which is enough to exclude the statement as hearsay—Mr. Hall's argument relies on the statement of Mr. Friedman's campaign being *true*. That is, Mr. Hall's point is that the Friedman campaign had to spend a lot of money, and Mr. Hall is relying on the truth of Exhibit 20 to prove that truth. These exhibits are therefore inadmissible.

Mr. Hall unquestionably offers opinion testimony, yet Plaintiffs' Response disclaims offering any *expert* opinions. We are left, then, with the sworn lay opinion of an attorney of record—which is inadmissible as expert testimony, and also inadmissible because it is irrelevant. The Court should therefore strike Mr. Hall's testimony and exhibits.

---

[15] *See* Dkt. 74, 62:9-69:22, *et seq.*
[16] Dkt. 84, p. 10.
[17] *Id.* (citing *Dallas Cnty. v. Commercial Union Assurance Co.*, 286 F.2d 388, 396 (5th Cir. 1961).
[18] FED. R. EVID. 803(16).
[19] *See* Dkt. 72-20 (2006), 72-21 (2010), and 72-26 (2021).
[20] Dkt. 84, p. 10; Dkt. 72-20.

### B.        Plaintiffs Admit Not Disclosing Ms. Bilyeu In Her Individual Capacity

The facts underlying Plaintffs' disclosure of Ms. Bilyeu are undisputed. Plaintiffs acknowledge never disclosing her as a potential witness in her individual capacity—that is, Plaintiffs never disclosed Ms. Bilyeu in the capacity in which she provides testimony in support of Plaintiffs' motion.

This offers a sharp contrast, for example, to Ms. Palmer, whom Plaintiffs disclosed individually, noting her former position with the Green Party of Texas. When Defendants deposed Ms. Palmer, they did so both as a 30(b)(6) witness for GPTX, and in her individual capacity. Defendants only deposed Ms. Bilyeu in her official capacity.

The Parties all agree that they were entitled to notice of witnesses in the capacities in which they would testify. The Parties also agree that Plaintiffs failed to notice Ms. Bilyeu in the capacity in which she testifies. The Court should therefore strike Ms. Bilyeu's testimony.

### C.        Plaintiffs' Other Declarations Are Not Based on Personal Knowledge

Plaintiffs' Response argues that Defendants' objections concerning the personal knowledge of Plaintiffs' declarants is "general." However, the Response only specifically responds to a handful of the specifically-cited offending paragraphs. Even then, Plaintiffs are unable to escape the speculation of their witnesses. With limited space for a Reply, Defendants will not rehash all of the offending testimony, but will raise a couple of illustrative examples.

The Response states categorically that none of Plaintiffs' declarants testify that it is impossible to run a successful volunteer campaign; a paragraph later, Plaintiffs cite precisely such testimony from Mr. Kafoury.[21] Mr. Kafoury likewise speculates about the market rate of petitions circulators, without ever establishing what personal knowledge he has regarding such a market.[22]

---

[21] Dkt. 84, pp. 4-5 (citing Dkt. 62, ¶ 19).
[22] Dkt. 62, ¶ 18 ("The $1 per signature that we paid our petition circulators was far below the market rate, but those petitioners were willing to accept it because they were dedicated campaign supporters").

The testimony of Ms. Palmer is yet more troubling (and inadmissible).[23] The throat-clearing "[m]y understanding" followed by the passive voice plainly demonstrate Ms. Palmer's speculation. In the following sentence, she admits she has no basis for any personal knowledge regarding the payment of the vendor. Ms. Palmer testified regarding the amounts paid to a third-party petition-collection vendor, despite acknowledging that neither she nor the campaign on which worked had any involvement with that vendor.

The cited testimony from Plaintiffs' declarants is inadmissible and should be struck.

## CONCLUSION

For the foregoing reasons, Defendants request the Court grant the Motion to Strike.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

/s/ Ryan G. Kercher
RYAN G. KERCHER
Texas Bar No. 24060998
Assistant Attorney General
WILLIAM D. WASSDORF
Texas Bar No. 24103022
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
Ryan.Kercher@oag.texas.gov

---

[23] Dkt. 63, ¶ 10 ("My understanding is that Free and Equal, Inc. was paid $525,000 for that petition drive. GPTX did not retain or pay Free and Equal and did not have any involvement in Free and Equal's signature gathering process.").

William.Wassdorf@oag.texas.gov
**ATTORNEY FOR DEFENDANTS**

### CERTIFICATE OF SERVICE

I certify that on October 26, 2021, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Ryan G. Kercher*
RYAN G. KERCHER
Assistant Attorney General